RUSSELL J. STOW ET AL. v. THE COMMON COUNCIL OF THE CITY OF GRAND RAPIDS.

*Constitutional law—Title of act—Clause giving immediate effect—Alteration of city wards.*

1. Act No. 449, Local Acts of 1889, creating two new wards in the city of Grand Rapids, is constitutional.

2. The "immediate effect" clause in an act of the Legislature, is no part of the bill itself, but is added by the engrossing clerk before the bill is sent to the Governor, and affixing said clause, by mistake, when *both* Houses have not ordered the act to take immediate effect, cannot destroy the validity of the enactment.

3. Cutting off and taking away a portion of the territory of their wards in creating new ones cannot oust the aldermen of their offices if they still reside in the remaining territory.

4. This case discusses the effect of such an alteration in the wards of the city of Grand Rapids, and *after* elections and appointments under the charter.

*Mandamus.* Submitted February 18, 1890. Granted February 20, 1890.

Relators apply for *mandamus* to compel action under Act No. 449, Local Acts of 1889, providing for the creation of two new wards in the city of Grand Rapids. The facts are stated in the opinion.

*Blair, Kingsley & Kleinhans,* for relators.

*M. J. Smiley* and *W. W. Taylor,* for respondents.

MORSE, J. The Legislature of 1889 passed an act providing for the addition of two more wards in the city of Grand Rapids, to be called the Ninth and Tenth; the Ninth to be created by a division of the old Eighth, and the Tenth carved out of territory belonging to the old

Third.   See Act No. 449, Local Acts of 1889, p. 877.

The common council having refused to recognize or act under this law, we are asked to compel them to do so by *mandamus*.   The respondents resist this application upon two grounds:

1. That the act was not passed in accordance with the provisions of the Constitution.
2. That it is too imperfect to be successfully carried out.

The first objection, under the first head, is that the act was approved by the Governor as one taking immediate effect, but that it was ordered to take such effect by only one House of the Legislature; that, therefore, the act signed by the executive is not the act passed by the Legislature.   This objection is not tenable.   The clause in the act, and at the end of it, providing that it shall take immediate effect, is no part of the bill itself. If the act is ordered, after passage, to take immediate effect by both Houses, the engrossing clerk adds this clause to the bill before it îs sent to the Governor for his signature.   The fact that such clerk by mistake, or for any other reason, has affixed this clause to the bill, when it was not so ordered by both Houses, and that the Governor has approved it as sent to him by the clerk, cannot destroy the validity of the enactment.   To hold otherwise would put it in the power of such clerk to defeat legislation, and make him too potent a factor in the enactment of laws.   The ·only result is in this case to postpone the time of the taking effect of this act until 90 days after the close of the session.   As that time has long since passed, this mistake is now of no importance.

The second objection, under the same head, relates to the title.   The title of the act reads as follows:

"An act to amend section four of Act No. 282 of the

Local Acts of 1877, entitled 'An Act to revise the charter of the city of Grand Rapids, being amendatory of an act entitled "An Act to incorporate the city of Grand Rapids," approved April 2, 1850,' approved March 29, 1877, as amended by the several acts amendatory thereof."

It appears from the journals of the Legislature that the title of the bill as introduced, and as it passed both Houses, and was engrossed and sent to the Governor, referred to Act No. 282 of the Local Acts of *1887*, instead of 1877, but the rest of the title was in all its stages as it now is. It is claimed that the title of the bill, as passed by the Legislature, was not the same title as that of the bill signed by the Governor; as it appears also from the journals that when the bill was returned by the Governor the title was as it is now, having been altered by some one outside of the Legislature, and not by its action. Therefore it is urged that the act is void, because it has a different title from the one agreed to by the Legislature. On examination it will be found that there is no Act No. 282 of the Local Acts of 1887, and Act No. 282 of the Public Acts of the same year has no reference to the city of Grand Rapids; but Act 282 of the Local Acts of *1877* is an act to revise the charter of Grand Rapids, and the one alluded to in the latter part of the title of the act under consideration. We think the figures "1887" in the title, as introduced and agreed to by the Legislature, were simply a clerical error, and were corrected by the reading of the whole title; and that the making of it "*1877*" was in harmony with the rest of the title, and but the correction of a clerical error,—a correction which would be permissible in a deed or contract, and which the law would make in default of any other action.

Another objection made to the title is that in the act of 1877 amended by this act there are ten titles, each of

which has a section 4, and that the title to which the section 4 to be amended by the present act belonged should have been stated in its title. But the section 4 to be amended is the first section 4 in Act No. 282 of the Local Acts of 1877, and the one embracing the subject amended by the body of this act. We think it would have been better practice to have inserted the title, for instance, "Title One," in this case, but we do not think any provision of the Constitution was violated, or that any person could have been misled by the title without this.

It is also contended that there is such an uncertainty about the law, in its provisions as to the election of. ward officers in the spring of 1890, that it is inoperative. There is no merit in this contention. The act provides—

"That the elective officers now holding office within that part of the said city comprised of the Third, Eighth, Ninth, and Tenth wards, as created by this act, shall continue to hold the offices for which they were respectively elected, and to discharge the duties of said offices, for the whole of the territory for which they were elected, until the officers are duly elected and qualified, as provided by the city charter, at the annual charter election on the first Monday of April, A. D. 1890; and after said date the several aldermen whose terms of offices shall not have expired shall only represent the territory within the ward in which they shall respectively reside, and at said annual charter election in 1890 aldermen and other ward officers shall be elected in accordance with the provisions of the charter of said city and the requirements of this act."

The respondents claim that this is an appointment of city officers by the Legislature, and not by the people, and that the act does not provide for the election of aldermen in the new wards. The first claim is not correct, because the aldermen simply continue in the offices to which they were elected in the wards in which they reside until such elected term expires, and they are made

aldermen over no new territory. Cutting off and taking away a portion of the territory of their wards cannot oust aldermen of their offices if they still reside in the territory left. Neither can this be done by changing the number of the ward. But, if they reside in the territory created into a new ward, there is a vacancy made in the office of alderman in the old ward, under the city charter, which would be filled at a special election, or at the next city election, as the common council may order, if such vacancy should occur within three months before such election. In case a ward is divided into two, as in this case, we think it competent for the Legislature to continue the aldermen in office for the rest of their term, as aldermen of the wards in which they may happen to reside by such division, and that the result is a vacancy in the ward in which only one or no alderman shall reside, which may be filled at the next spring election. If it shall happen that, in either of the two new wards, there shall be no alderman residing within them whose term does not expire until 1891, we think it will be perfectly competent, under the charter, for the people to elect two aldermen,—one for two years, and one for one year. The city charter provides for the election every year of one alderman in each ward for the term of two years, but there will also be a vacancy, in effect, by this act, to be filled, and under the provisions of the city charter as to the filling of vacancies. There can be no trouble about registration or election of officers, because, although the aldermen and supervisor of each ward constitute the board of registration and the election inspectors of such ward, the common council, under the city charter, have power to fill all vacancies in these boards, and to create new ones, if none exist. Section 11, tit. 2.

We think the act is valid, and the writ of *mandamus* must issue to the common council of Grand Rapids,

directing and commanding them to take necessary steps to provide for the special election to be held in said city, March 11, 1890, by providing boards of registration and election for said wards, places for holding meetings of such registration boards, and also for the election, and whatever else may be required and necessary for the holding of such election.

The other Justices concurred.