# HOLLIBAUGH AND BUNTEN v. HEHN, AS WARDEN OF STATE PENITENTIARY.

Habeas Corpus—Judgment Upon Which Petitioners Are Imprisoned Impeachable Only for Jurisdictional Defects—Arrest Without Warrant—Waiver—Informations—Verification on Information and Belief—Waiver—Plea of Guilty—Sentence—Constitutional Law—Plea of Guilty of Inferior Degree—Jurisdiction to Accept—Jury—Courts—Statutory Construction—Statutes.

1. In a habeas corpus proceeding to determine the legality of the imprisonment of a person under criminal sentence, it is not competent to assail the judgment under which such person is imprisoned for any irregularity, error or defect not affecting the jurisdiction of the court to render the judgment.

2. The arrest without a warrant of one charged with crime is not a jurisdictional defect, if any, where, upon his subsequent presence in court, he is arraigned without objection on that ground.

3. Where one against whom a criminal information has been filed is brought before the court and arraigned, and his plea taken without objection as to the manner of his arrest, the court has jurisdiction of his person, though he may have been arrested without a warrant.

4. If the fact that a defendant charged with crime was arrested without a warrant is at any time a valid objection, it is waived by submitting to arraignment in open court and pleading to the information without objection on that ground.

5. The filing of an information without a previous preliminary examination being expressly authorized, "whenever an offense shall be charged against any person at any time within thirty days immediately preceding the first day of a regular term of court" in the county (R. S., Sec. 5273), a preliminary examination is not required to authorize the filing of an information, where, though the crime may have been committed more than thirty days before the term of court, the defendant was not charged therewith until the date of his arrest within such period of thirty days.

6. The statute authorizing the verification of an information by the prosecuting attorney upon information and belief (R. S., Secs. 5270, 5271), such a verification is sufficient for

every purpose except issuing a warrant for the arrest of the defendant.

7. Any objection that might properly have been taken to the verification of an information by the prosecuting attorney on information and belief is waived by the defendant submitting himself to the jurisdiction of the court, without objection, and voluntarily pleading to the merits.

8. The statute (R. S., Sec. 5334), which provides that if the accused plead guilty the plea shall be recorded on the indictment and in the records of the court, and the accused committed until sentence, is not obnoxious to the constitutional guaranty of a jury trial; since, upon a plea of guilty, there is nothing to be tried by a jury, such plea admitting the material facts alleged in the indictment or information that are well pleaded, and being equivalent to a conviction.

9. The statute authorizing the conviction of an inferior degree of the crime charged in the indictment or information, a defendant may plead guilty of such inferior degree, with the assent of the court and the prosecuting officer, and sentence may be thereon pronounced by the court.

10. Under an information charging murder in the first degree, it is within the power of the court to accept a plea of guilty of murder in the second degree, and pronounce sentence thereon, without a new information or the intervention of a jury.

11. An information which charges that the defendant did "unlawfully, purposely and with premeditated malice kill and murder the deceased," while charging murder in the first degree, contains every element of murder in the second degree, which is committed when the killing is done purposely and maliciously, but without premeditation; and a plea entered upon the information of guilty of murder in the second degree, amounts therefore to a solemn confession of every material allegation save and except that of premeditation; and hence where the prosecution and court are willing to accept such plea the defendant may be sentenced thereon, without the intervention of a jury.

12. A charge that defendant's plea of guilty was not voluntary, but was extorted through fear and misrepresentation, cannot be considered on habeas corpus, no requirement of the statute appearing to have been violated in taking the plea.

13. The fact that no jury is in attendance, or that none has been ordered. or secured for the trial of causes, does not

prevent an arraignment and plea in a criminal case, nor entitle a prisoner who has been sentenced upon his plea of guilty to discharge on habeas corpus.

14. Where the legislative intent is subject to no uncertainty, an amendatory statute should not be held invalid for an erroneous reference in the title and in the body of the act to the section to be amended.

15. The revision of 1887 is entitled to be known as the "Revised Statutes of Wyoming," and the revision of 1899 as the "Revised Statutes of Wyoming, 1899." All laws of a general nature not expressly continued in force by the later revision were, by the act providing therefor, repealed. Section 3299 of the revision of 1887 was carried into the said subsequent revision as Section 5363 and had reference to crimes; while Section 3299 of such subsequent revision was formerly a part of Chapter 27, Laws of 1897, and provided for the terms of court in the Fourth District. Chapter 6, Laws 1901, is entitled "An act to amend and re-enact Section 3299 of the Revised Statutes of Wyoming, relating to terms of court in Fourth Judicial District," and, in the body of the act, the section to be amended is described as "Section 3299 of the Revised Statutes of the State of Wyoming." The section is thereby re-enacted at length, and prescribes the times for holding terms of court in the various counties composing the Fourth District. *Held*, against the objection that the title is misleading, and the subject not germane to the subject of the original section, that as the explanatory part of the title, as well as the act itself, furnishes unequivocal evidence of the legislative intention to amend the designated section of the Revised Statutes of Wyoming, 1899, the act will be so construed, and is therefore valid.

16. A term of court held in a county of the Fourth District in March, 1901, pursuant to and as required by the act of 1901, approved February 5, 1901 (Chapter 6, Laws 1901), was held at the time authorized and required by law.

[Decided March 20, 1905.]                    (79 Pac., 1044.)

ORIGINAL proceeding in habeas corpus prosecuted on behalf of Charles E. Hollibaugh and Eric Bunten to determine the legality of their imprisonment in the state penitentiary. The facts are stated in the opinion.

*Allen G. Fisher,* for plaintiffs, cited Wartner v. State, 102 Ind., 51; *Ex parte* Carr, 22 Neb., 540; State v. Stephens, 71 Mo., 535; 6 Colo., 559; 7 id., 384; id., 502.

POTTER, JUSTICE.

Charles E. Hollibaugh and Eric Bunten have jointly filed a petition in this court praying for the writ of habeas corpus and their discharge from the state penitentiary, wherein it is alleged they are unlawfully restrained of their liberty. The matter has been heard upon the petition, and the question is whether upon the facts alleged a prima facie case is made for the issuance of the writ.

The petitioners are confined upon a sentence of the District Court in and for Johnson County following a plea of guilty entered by each of them of the crime of murder in the second degree. It is alleged that on or about March 1, 1901, they were arrested by the sheriff of Johnson County, at their place of residence in said county, without a warrant or other process and thereupon were imprisoned in the county jail of that county, and, during that imprisonment and in the same month, they were brought before the District Court to answer to an information charging them jointly with the crime of murder in the first degree, for the killing of one Andrew S. Brown; and that without the benefit of counsel, they pleaded guilty to murder in the second degree. It is alleged that they were induced to enter said plea by reason of representations made to them by one who had been employed for that purpose by the sheriff and prosecuting attorney that there was great danger of their being taken from the jail by a mob and lynched, and that if they would plead guilty the officers aforesaid would sign a petition for their pardon after they had served two years in the penitentiary; and that the court made no inquiry of them as to whether their plea was voluntary or not. It is alleged further that they were not given a preliminary examination, and that they did not waive the same; that they were not charged with the crime

upon oath, and that the information charging them with the crime aforesaid was not based upon any affidavit or sworn complaint, nor any writ or order for their arrest; and that the term of court at which the proceedings were had was held at a time not authorized by law. While the petitioners allege that they are not in fact guilty of any degree of the crime charged in the information filed against them, they do not deny that they killed the deceased on the contrary, that seems to be admitted, and there is a rather vague attempt to allege that the killing was done in self-defense.

From the record which accompanies the petition, it appears that the information was filed March 18, 1901, charging that the petitioners did on January 22, 1901, "unlawfully, feloniously, purposely and with premeditated malice kill and murder one Andrew S. Brown." That information was verified by the prosecuting attorney on information and belief. The term of court convened March 25, 1901, and on that day the defendants (petitioners here) were brought into court and counsel was assigned to defend them, and thereupon they were arraigned and each pleaded guilty to the crime of murder in the second degree, and they were remanded to the custody of the sheriff to await sentence. The sentence was imposed March 27, 1901, and we observe no imperfection in the record thereof, nor is any suggested.

It is not competent in this proceeding to assail the judgment under which the petitioners were imprisoned for any irregularity, error or defect not affecting the jurisdiction of the court to render the judgment. (Kingen v. Kelley, 3 Wyo., 566; Miskimmins v. Shaver, 8 Wyo., 392; Fisher v. McDaniel, 9 Wyo., 457.)

The fact that the arrest of petitioners was made without a warrant is not a jurisdictional defect, if any, in view of their subsequent presence in court and arraignment without objection on that ground. That the court then had jurisdiction of their persons cannot be doubted. If it

should be conceded that the arrest was illegal, the objection, if at any time a valid one, was waived. As was said in State v. Fitzgerald, 51 Minn., 534, "When a valid indictment is found, or where no indictment is necessary, a valid complaint is filed, the court has jurisdiction to cause the defendant to be brought before it to answer to the indictment or complaint; and when he is actually before it, and called upon to plead, if he has any objection to make to the manner in which he was brought before it, he ought to make the objection then." In Kingen v. Kelley, 3 Wyo., 566, Mr. Justice Conaway said in the course of the opinion: "By no stretch of the imagination can it be conceived that the arrest of a defendant in a criminal action without a legal warrant, or his abduction by force and against his will from a neighboring state, could affect the general jurisdiction of the District Court to try cases of grand larceny, or to pronounce judgment on convictions therefor, imposing the legal penalties," and though it was held in that case, which was a habeas corpus proceeding, that the forcible arrest of petitioner in Nebraska without a warrant did not entitle him to be discharged, on the broad ground that "no person held to answer a criminal charge, either before or after conviction, has any right to invoke the principles of comity to shield him from trial when charged with crime, or from punishment when convicted," the learned judge said: "It may well be doubted whether the failure to interpose this objection to the jurisdiction of the person of petitioner upon arraignment and before pleading not guilty, and entering upon the trial, was not a waiver of the objection." In People ex rel. Edwards v. Warden, 76 N. Y. Supplement, the court say: "The general rule is that it is no defense to a criminal prosecution that the defendant was illegally or forcibly brought within the jurisdiction of the court." To the same effect are the following: Commonwealth v. Conlin, 184 Mass., 195; Ledgerwood v. State, 134 Ind., 81; State v. Dibble, 59 Conn., 168; State v. Brewster, 7 Vt., 118; Dow's case, 18 Pa. St.,

37. (See also State v. Sureties of Krohne, 4 Wyo., 347;
State v. Melvern, 32 Wash., 7.) In the Washington case
cited the defendant asked a reversal of a judgment of con-
viction of the crime of murder in the second degree on the
ground that he had been arrested without warrant. But as
he was in fact in the custody of an officer, was present in
court on the day of his arraignment, pleaded not guilty, and
was in court throughout the trial, it was held that there was
no doubt of the court's jurisdiction; and the court say:
"The mere fact that he was arrested in the first instance, by
a person not having a lawful warrant therefor, and detained
by him, constitutes no ground for the reversal of the judg-
ment."

The statute expressly authorizes a defendant charged with
crime to waive a preliminary examination; and it might
reasonably be held that such a waiver results where a de-
fendant without making the objection that such examination
has not been had suffers himself to be arraigned upon the
information and pleads thereto either guilty or not guilty.
(12 Cyc., 353; Clark's Cr. Proc., p. 82.) It is held in Mich-
igan that the plea of not guilty amounts to a waiver of such
objection. (Washburn v. People, 10 Mich., 383; People v.
Jones, 24 Mich., 215; People v. Williams, 93 Mich., 623.)
But there is nothing in this case to show that the petitioners
were charged with the crime until March 1, 1901, which
was within thirty days immediately preceding the first day
of the next regular term of the District Court in the county,
viz: March 25, 1901. The statute expressly authorized an
information to be filed without a previous preliminary exam-
ination "whenever an offense shall be charged against any
person at any time within thirty days immediately preceding
the first day of a regular term of court of the county wherein
such offense is charged to have been committed." (R. S.
1899, Sec. 5273.) Assuming, therefore, that the term was
authorized by law, which is a question yet to be considered,
a preliminary examination was not required. It was held
by this court in State v. Sureties of Krohne, 4 Wyo., 347,

that a former statute expressly authorizing an information to be filed without a preliminary examination "whenever the county and prosecuting attorney is satisfied that a crime or offense has been committed in his county," was not unconsitutional or void, although it was deemed to be harsh and to lodge a dangerous power in the hands of the prosecuting officer.

The objection that the information was verified by the prosecuting attorney upon information and belief only, and that there was no complaint or affidavit charging the petitioners with the crime sworn to positively, is not tenable upon the facts in this case. The statute authorizes the verification of an information by the prosecuting attorney upon information and belief. (R. S. 1899, Secs. 5270, 5271.)

And it is clear that such a verification is sufficient for every purpose except issuing a warrant for the arrest of the defendant. (State v. Blackman, 32 Kan., 615 (5 Pac., 173); State v. Longton, 35 Kan., 375 (11 Pac., 163); In re Cummings (Okla.), 66 Pac., 332; State v. Tuckman, 47 Kan., 726; State v. Barr, 54 Kan., 230 (38 Pac., 289.) No objection to the alleged illegality of the arrest was interposed at any stage of the proceedings, and as already shown such objection was waived; and so any objection that might properly have been taken to the manner of the verification to the information was waived by the conduct of defendants in submitting themselves to the jurisdiction of the court and voluntarily pleading to the merits. (State v. Allison, 44 Kan., 423, and cases above cited.)

It seems to be contended that the constitutional right of the defendants to a jury trial was violated. But the statute provides that "If the accused plead 'guilty' the plea shall be recorded on the indictment and in the records of the court, and the accused shall be committed until sentence." (R. S. 1899, Sec. 5334.) And it is not perceived that this statute is obnoxious to the constitutional guarantee of a jury trial. Upon the plea of guilty there was nothing to be tried by a jury. Such a plea admits the material facts alleged in the

indictment or information, at least such as are well pleaded, and is equivalent to a conviction. (Clark's Cr. Proc., p. 372; 1 Bish. New Cr. Proc., Sec. 795; 12 Cyc., 353; 2 Ency. Pl. & Pr., 779; People v. Golstein, 32 Cai., 432; People v. Morris, 80 Mich., 634; Marx v. People, 204 Ill., 248; People v. McEwen, 67 How. Pr., 105; Green v. Corn, 12 Allen, 155; People v. Nall, 67 Cal., 113 (7 Pac., 164); Com. v. Ayers, 115 Mass., 137; Hallinger v. Davis, 146 U. S., 314; People v. King, 28 Cal., 265.) In the last case cited the California court held that a statutory provision for entering a plea of guilty when a defendant stands mute was not void, and that where a defendant stands upon his demurrer to the indictment and refuses to plead, he is no more entitled to a trial than he would be upon a plea of guilty; and the court stated that it presumed that no one would contend that the law providing for a plea of guilty is repugnant to the constitutional provision securing the right of trial by jury. In the case of Hallinger v. Davis, *supra*, the Supreme Court of the United States held that a state statute authorizing the court, upon a plea of guilty to an indictment for murder, to proceed by the examination of witnesses to determine the degree of the crime, was not repugnant to the fourteenth amendment of the Federal Constitution prohibiting any state from depriving any person of life, liberty or property without due process of law. It was stated in the opinion that the right of the accused to a trial was not affected, and the learned justice who delivered the opinion significantly said: "If a recorded confession of every material averment of an indictment puts the confessor upon the country, the institution of jury trial and the legal effect of a plea of guilty have been very imperfectly understood not only by the authors of the constitution and their successors down to the present time, but also by all generations of men who have lived under the common law."

We have been cited to the case of Wartner v. State, 102 Ind., 51, where it was held that it was error for the court to find a defendant guilty of murder in the first degree upon

his plea of guilty, and sentence him to death, without a jury. That decision, however, was rendered upon a statute providing that the defendant and prosecuting attorney, with the assent of the court, may submit the trial to the court, except in capital cases, and that all other trials must be by jury, and another statute providing that the punishment for murder in the first degree should be death or imprisonment for life *in the discretion of the jury.* And in that state the statute allowing a defendant in criminal cases other than capital to waive a jury and submit the trial to the court has been held constitutional and valid. (Murphy v. State, 97 Ind., 579.) And in that state also it is held that where the trial court proceeds without a jury to hear the matter upon a plea of guilty to an indictment charging murder in the first degree, and sentences the prisoner on such plea to life imprisonment, the error is not reviewable on habeas corpus. (Lowery v. Howard, 103 Ind., 440.)

It is next contended that it was not within the power of the court to take a plea of guilty of murder in the second degree, and pronounce judgment thereon, without a new information; that a jury only is entitled to convict of an inferior degree of the crime charged in the information. The statute provides that, "Upon an indictment for an offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged, and guilty of any degree inferior thereto, and upon an indictment for any offense, the jury may find the defendant not guilty of the offense, but guilty of an attempt to commit the same, when such an attempt is an offense." (R. S. 1899, Sec. 5389.) And it is also provided that all provisions of law applying to prosecutions and proceedings upon indictments shall apply to informations and proceedings thereon. (Id., Sec. 5317.)

Murder in the first degree is defined by the statute as follows: "Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate any rape, arson, robbery or burglary, or by administering poison or causing the same to be done, kills any human being, is

guilty of murder in the first degree and shall suffer death."
(R. S. 1899, Sec. 4950.) The crime becomes murder in the
second degree whenever it is committed "purposely and
maliciously, *but without premeditation."* (Id., Sec. 4953.)
The information, as permitted by statute, without alleging
the means employed by which death was caused (Id., Sec.
5303), charged that the prisoners did "unlawfully, feloni-
ously, purposely and with premeditated malice kill and mur-
der" the deceased. While this charged murder in the first
degree, it contained every element of the crime of murder in
the second degree. The allegation that the killing was done
with premeditated malice is certainly a sufficient averment
that it was done maliciously; and, at any rate, a charge of
the lesser degree is involved in a charge of the higher.

The plea of guilty of murder in the second degree, there-
fore, amounted to a solemn confession of every material
allegation of the information save and except that of pre-
meditation. By that plea the prisoners confessed that they
killed and murdered the deceased purposely and maliciously,
but without premeditation. If the prosecution and the court
were willing to accept the plea, it is not perceived that there
was any occasion for enlisting the services of a jury.

It has been the common practice in the District Courts of
the state, when deemed warranted by the facts and with the
consent of the prosecuting attorney, to accept a plea of
guilty of a lesser or inferior grade or degree of the crime
charged; and so far as we are aware the legality of such
procedure has not heretofore been questioned. In the case
on Conway v. State, 4 Wyo., 107, there had been a plea en-
tered and accepted of guilty of murder in the second degree
to an indictment for murder in the first degree, upon the
withdrawal pending trial of a former plea of not guilty. It
was contended that the plea had not in fact been made by
the prisoner in person, but there was no suggestion in the
case of a lack of power in the court to accept it and impose
sentence thereon.

We are unable to perceive any reason under our statutes
why such a plea, if voluntarily offered, may not be legally

accepted by the court without a submission of the matter to a jury. There is no statute requiring that the case be submitted to a jury upon such a plea; and as the court and not the jury is required by statute to fix the punishment, there is no apparent necessity for the intervention of a jury. The statute authorizing a conviction of an inferior degree, we think it clear that with the assent of the court and the prosecuting officer a defendant may plead guilty thereof, and that sentence may be thereon pronounced by the court. (People v. Smith, 78 Hun, 179; Gillett Cr. Law, Sec. 781.) In a learned discussion of this question by Judge McPherson, sitting in the United States Circuit Court for the District of Nebraska, it was held that on an indictment for murder the court may accept a plea of guilty of manslaughter, even against the protest of the prosecuting attorney. (U. S. v. Linnier, 125 Fed., 83.) In People v. Smith, *supra,* it was said that the matter was too simple and plain for argument. That was a habeas corpus proceeding on behalf of a prisoner who had been indicted for murder in the first degree and pleaded guilty of manslaughter in the second degree and had been thereon sentenced to imprisonment in the penitentiary.

The charge that the plea of guilty was not voluntary, but was extorted from the prisoners through fear and misrepresentation, cannot be considered. If there is anything in that charge, the remedy, if any, is a different proceeding than habeas corpus. (Sanders v. State, 85 Ind., 318; Wheeler v. State, 158 Ind., 687; State v. Calhoun (Kan.), 32 Pac., 38.) The statutes of this state contain no express provisions respecting the manner in which the trial court shall satisfy itself that a plea of guilty is voluntary; and no command or requirement of the statute appears to have been violated in the taking of the plea. The court in that proceeding was acting within its legitimate province and in a lawful manner, and hence the correctness of its action in that respect cannot be questioned on habeas corpus. (R. S. 1899, Sec. 5498.)

The objection that the court was without jurisdiction because no jury was in attendance is not well taken. We are

aware of no rule of law that prevents an arraignment and plea in the absence of a jury, or when a jury has not been ordered or secured for the trial of causes. Under the statute the court is not required to have a jury present at the first day of the term. Whenever the business of the court requires the attendance of a trial jury for the trial of civil or criminal causes, and none is in attendance, it is the duty of the court to order that a trial jury be drawn and summoned to attend before the court; but the judge may make an order in vacation directing the drawing and summoning of a trial jury to attend on the first day of the ensuing term. (Laws 1901, Ch. 109, Sec. 2.)

Finally, it is contended that the term of court at which the petitioners were called on to plead and were sentenced was held at a time not authorized by law, and that the court was, therefore, without jurisdiction in the premises. This contention is based on the alleged invalidity of the act of February 5, 1901, fixing the terms of court in the Fourth Judicial District, said act being Chapter 6 of the Laws of 1901. The title of that act is, "An act to amend and re-enact Section 3299 of the Revised Statutes of Wyoming, relating to terms of court in Fourth Judicial District." And in the body of the act it is provided, "That Section 3299 of the Revised Statutes of the State of Wyoming be amended so as to read as follows: Section 1. Regular terms of the District Court in the several counties of the Fourth Judicial District shall be held in each year at the respective county seats of such counties as follows: * * * In the County of Johnson, two terms, one beginning on the fourth Monday in March and one beginning on the fourth Monday in September. * * *" The term of court at which the proceedings were had resulting in the judgment against these petitioners was the March, 1901, term, held pursuant to that act.

The ground of the supposed invalidity of the act is that it purports to amend a designated section of the Revised Statutes of Wyoming, which, it is argued, must be understood and taken to be the revision of 1887, since that revision is the

only one authorized to be known by that name, and the specified section of that revision does not relate to terms of court, but to evidence in trials for conspiracy; and that the title is, therefore, misleading, and the subject of the act is not germane to the subject of the original section.

It is evident, however, that the intention was to amend Section 3299 of the Revised Statutes of Wyoming, 1899, which fixed the terms of court in the Fourth District, and had reference to no other matter. It is true that the strict legal title given by statute to the later revision is "Revised Statutes of Wyoming, 1899." But whenever possible to do so, effect should be given to the manifest legislative intent. "An error in the reference is immaterial where the intent is apparent." (26 Ency. Law (2d Ed.), 706.). "Errors which are manifest from an inspection of the title itself, or from the title taken in connection with facts of which the court will take judicial notice, may be corrected by the court, or the title read as if such corrections had been made." (Lewis' Suth. Stat. Constr., Sec. 133.)

If, therefore, the legislative intent is subject to no uncertainty, the act should not be held invalid, even though the reference in the title and in the body of the act to the section to be amended is to be regarded as erroneous. (State v. Cross, 44 W. Va., 315; Otis v. People, 196 Ill., 542; Baker v. Agr. L. Co., 62 Kan., 70; People v. King, 28 Cal., 265; Snow v. Grand Rapids, 79 Mich., 595; State v. Robinson, 32 Or., 43; Lewis' Suth. Stat. Constr., Sec. 138.)

All laws of a general nature in force at the taking effect of the Revised Statutes of 1899, and not therein expressly continued in force, were, by the act providing for such revision, repealed. (R. S. 1899, Sec. 2713.) Section 3299 of the revision of 1887 was carried into the said subsequent revision as Section 5363 thereof; while Section 3299 of the revision of 1899 was formerly a part of Chapter 27 of the Laws of 1897, and, as already mentioned, provided for the terms of court in the several counties comprising the Fourth District.

The title of the act of 1901 not only specified the number of the section proposed to be amended, but the words were added "relating to terms of court in Fourth District." The information was thus given by the title that the section to be amended related to a certain subject. A section known by the designated number and relating to the subject specified is found in the Revised Statutes, 1899. Moreover, that is the body of Revised Statutes more apt to be intended by a subsequent act amendatory of general laws. Again, the section is re-enacted at length by the act of 1901, covering by its provisions every matter contained in Section 3299 of the revision of 1899, but making changes only in the times for holding the regular terms of court in several of the counties.

There is, therefore, not the slightest chance for doubt of the intention of the Legislature. It is absolutely clear and certain that it was intended to amend and re-enact Section 3299 of the Revised Statutes of Wyoming, 1899. The explanatory part of the title as to subject, and the act itself furnish unequivocal evidence of that intention. If, therefore, the omission of the year "1899" in describing the revision referred to is to be considered as an error in reference, the legislative intent is so clear and manifest that the court would not be justified in holding the act invalid on that ground. In view of the qualifying words in the title, followed by a re-enactment of the section at length, it might be reasonably held, we think, that the title referred to the revision of 1899 rather than the revision of 1887. In our opinion, the term of court at which the proceedings complained of were had was held at the time authorized and required by law.

We have considered all the points urged as grounds for the issuance of the writ. No sufficient reason for its issuance has been shown, and the writ will be denied.

<em>Writ denied.</em>

BEARD, J., concurs.