## SMITH v. ROACH, WARDEN

(No. 2182; October 22, 1940; 106 Pac. (2d) 536)

For the respondent and in support of the demurrer, there was a brief by *Ewing T. Kerr,* Attorney General; *Harold I. Bacheller,* Deputy Attorney General; and *Arthur Kline,* Assistant Attorney General, all of Cheyenne, and oral argument by *Mr. Bacheller.*

For the petitioner in resistance of the demurrer, there was a brief by *Paul B. Lorenz* of Cheyenne, Wyoming, and *Samuel D. Menin* of Denver, Colorado, and oral argument by *Mr. Menin*.

KIMBALL, Justice.

Plaintiff, who will be called petitioner, applies for a writ of habeas corpus to release him from the custody of the warden of the penitentiary where he is serving a life term under a sentence pronounced in 1931 on a plea of guilty of murder in the second degree. A previous application to the judge of the district court of the second district was denied.

A hearing has been had on a demurrer on the ground that the petition does not show that the petitioner would be entitled to any relief.

The petition aided by attached exhibits shows these facts: In August, 1930, the petitioner was arrested and held to appear in the district court of Hot Springs county to answer the charge of murder in the first degree. In October, 1930, the information was filed in the district court charging that the petitioner, on August 8, 1930, in said county, "did wilfully, unlawfully, feloniously, purposely, and with premeditated malice, kill and murder one Newton Thornley, a human being, while he, the said Luther G. Smith, was then and there forcibly and feloniously taking money from the person of him, the said Newton Thornley, by violence * * *." October 15, petitioner, by his attorney, filed two motions. One motion asked that the state be required to elect whether it would contend that the crime was murder in the first degree by killing "purposely and with premeditated malice," or "in the perpetration of robbery." The other motion asserted that the charge that the killing was done while money was being forcibly and feloniously taken from the person of the victim was surplusage and prejudicial, and asked that it be

struck from the information. Thereafter, by proceedings commenced January 3, 1931, in the same court, it was determined and declared that the petitioner was "insane or incompetent," and on February 2, 1931, he was committed to the Wyoming State Hospital for the insane. July 9, 1931, the superintendent of the hospital discharged the petitioner "as not insane," and turned him over to the sheriff of Hot Springs county, where the criminal case was still pending. After petitioner's return from the state hospital, counsel who had previously represented him, and had filed the two motions mentioned above, did not appear further, and on July 11, 1931, another attorney of ability and long experience was appointed to represent petitioner. August 29, 1931, petitioner entered the plea of guilty and the sentence was pronounced by a judgment containing the usual recitals.

In considering the questions before us we have in mind that it is not the purpose of the writ of habeas corpus to interrupt the orderly administration of the criminal laws by a competent court acting within its jurisdiction. Hovey v. Sheffner, 16 Wyo. 254, 265-267, 93 P. 305, and cases cited. It is not in the nature of, nor to be used as a substitute for, proceeding in error or appeal. When the petitioner is imprisoned under the judgment of a court, his application for release by habeas corpus is a collateral attack on the judgment and the writ should not issue unless the judgment is void on jurisdictional grounds. Miskimmins v. Shaver, 8 Wyo. 392, 64 P. 337; Younger v. Hehn, 12 Wyo. 289, 75 P. 443.

The statutes (sections 56-109 to 56-113, R. S. 1931) under which the petitioner, on February 2, 1931, was committed to the state hospital for the insane, and, on July 9, 1931, released from the hospital and returned to the custody of the sheriff, were passed in 1895 as an act entitled "An act providing for the custody and

treatment of persons of unsound mind who have been accused or convicted of criminal offenses." Sess. Laws of 1895, ch. 103. This act, so far as now material, provides that when it shall be determined that a person accused of any crime and confined in jail awaiting trial is insane, he shall be taken to the place provided for the custody and treatment of such persons, and that on recovery of his reason, he shall be returned to the county jail where he was at the time of insanity inquiry, "there to be tried." A later act passed in 1929, (ch. 155, Sess. Laws of 1929) provided generally for the commitment of all insane persons, and for their treatment, parole, discharge, etc. This act is carried in the Revised Statutes of 1931 as sections 56-118 to 56-138. Section 56-134 provides that "Under such regulations as may seem advisable to the state board of charities and reform, the superintendent of the state hospital may discharge a patient because he is not insane, or because he has recovered" and for other reasons. Section 56-135 provides that "When notified that a patient has been discharged as recovered or not insane, the judge of the district court must enter an order restoring the patient to all his rights as a citizen, and if a guardian of his estate has been appointed, such guardian must render his accounts to the court and the guardianship be terminated."

In the petition for the writ it is alleged that when the petitioner entered the plea of guilty in the criminal proceeding he had not been adjudicated sane "in that the district court did not enter an order restoring petitioner to all his rights as a citizen," as required by section 56-135, supra. Though it is not alleged that petitioner was in fact insane when he entered the plea or at any later time, it is contended that until the entry of the order restoring his rights as a citizen he was a "non-entity," and the district court was without jurisdiction to accept his plea and enter judgment

thereon. The contention is without merit. It may be doubted that the provisions of section 56-135, supra, requiring an order of restoration of rights, were intended to apply to persons who, under the act of 1895, supra, are returned to jail to await trial on a criminal charge; but that question need not be decided in this case. The fact of petitioner's sanity was established, at least prima facie, by his discharge from the state hospital. This would have been so even before there was any statute which in terms authorized the superintendent to discharge patients. Byers v. Solier, 16 Wyo. 232, 93 P. 59. The entry of the order restoring the rights of citizenship is a ministerial act required, as petitioner admits, by a mandatory statute. The basis for the order is the fact of discharge of the patient as recovered or not insane. We cannot hold that after discharge and before the entry of the order the petitioner retained the status of an insane person so as to deprive the district court of jurisdiction in the criminal proceedings. See People v. Farrell, 31 Calif. 576; People v. Rice, 83 Calif. App. 55, 256 P. 450; People v. Superior Court, 4 Cal .(2d) 136, 47 P. (2d) 724; State v. Pritchett, 106 N. C. 667, 11 S. E. 357.

It is also alleged that petitioner pleaded guilty in reliance on the previous promise of the judge of the district court that if the plea were entered he would impose a sentence of only five years imprisonment. Cited cases say that a plea of guilty must be voluntary —not induced by fear, persuasion, promise or ignorance; but only two habeas corpus cases are cited, and in all the others the question was raised on appeal after denial of a motion to set aside the judgment and withdraw the plea. The two habeas corpus cases, Johnson v. Zerbst, 304 U. S. 458, and Ex parte Hollins, 54 Okla. Cr. 70, 14 P. (2d) 243, are not in point. In Johnson v. Zerbst the petitioner without the advice of counsel had pleaded not guilty, had been convicted after

a trial and had let the time for appeal elapse, and it was held that if he had not waived his constitutional right to counsel the judgment of conviction was void for want of jurisdiction. In Ex parte Hollins, supra, a writ of habeas corpus was awarded for the reason that "the entire proceedings were had in the presence of an imminent threat of mob violence" and the death penalty imposed after a plea of guilty "on an ignorant negro, of low mentality and unable to read or write, who was not represented by counsel." See Ex parte Faber, 56 Okla. Cr. 177, 35 P. (2d) 741, where the same court said that the Hollins case was not to be stretched to cover a case wherein the petitioner convicted on a plea of guilty alleged, among other things, that she was induced to enter the plea by a promise that she would receive a suspended sentence. See, also, Ex parte Gardner, 54 Okla. Cr. 294, 19 P. (2d) 910.

Hollibaugh v. Hehn, 13 Wyo. 269, 79 P. 1044, was an application for writ of habeas corpus by petitioners who were confined under a sentence following a plea of guilty of murder in the second degree. It was held that: "The charge that the plea of guilty was not voluntary, but was extorted from the prisoners through fear and misrepresentation, cannot be considered. If there is anything in that charge, the remedy, if any, is a different proceeding than habeas corpus." This ruling is controlling in the present case. Other cases in accord are State ex rel. Kelly v. Wolfer, 119 Minn. 368, 138 N. W. 315, 42 L. R. A. (N. S.) 978 (plea induced by judge's promise of a light sentence) ; Lockard v. Clark, 166 Ia. 566, 147 N. W. 900 (plea fraudulently induced by defendant's counsel) ; Darling v. Fenton, 120 Neb. 829, 235 N. W. 582 (plea induced by fear of mob violence) ; Ex parte Faber, supra, and Ex parte Gardner, supra.

The confusion in the administration of criminal law that would result from a different holding on this point

is aptly illustrated by the case at bar. The claim that the plea was induced by a promise of the judge is made more than nine years after the transaction. The judge who is charged with having made the promise is dead. If any relief should be granted, it would be a vacation of the judgment on the ground that the plea should be withdrawn. Further proceedings in the criminal case might result in an acquittal because the state's witnesses are not now available. These would seem good reasons for adhering to the general rule and confining our inquiry to jurisdictional facts.

The contention that seems to be urged most earnestly by petitioner is that the court did not have jurisdiction to pass sentence following a plea of guilty of murder in the second degree on an information that contained the allegation that he killed the deceased while perpetrating a robbery. In Hollibaugh v. Hehn, 13 Wyo. 269, 79 P. 1044, we held that a plea of guilty of murder in the second degree can be accepted as a conviction on an information charging murder in the first degree in the statutory form: "that the defendant did purposely and with premeditated malice kill and murder the deceased." Sec. 33-417, R. S. 1931. The court said that the charge "contained every element of the crime of murder in the second degree" which is the degree of the crime when committed "purposely and maliciously, but without premeditation" (sec. 32-204), and that "the plea of guilty of murder in the second degree, therefore, amounted to a solemn confession of every material allegation of the information save and except that of premeditation."

The information in the present case charged the petitioner with murder in the first degree in the statutory form, and, therefore, as held in Hollibaugh v. Hehn, included the charge of murder in the second degree, but it contained the additional allegation that the murder was committed while petitioner was robbing the

deceased. We do not think this additional allegation makes the present case distinguishable from Hollibaugh v. Hehn. It is true of course, as petitioner argues, that if he killed the deceased in perpetrating a robbery he was guilty of murder in the first degree. But he did not plead guilty of that crime. The allegation mentioning the robbery was unnecessary (Harris v. State, 34 Wyo. 175, 242 P. 411) and may be treated as immaterial either because it is surplusage as suggested by petitioner's motion mentioned above (see State v. Meyers, 99 Mo. 107, 12 S. W. 516), or because, like the allegation charging premeditation, it was not confessed by the plea of guilty of murder in the second degree. It is provided by statute (Sec. 33-415, R. S. 1931) that "No indictment shall be deemed invalid, nor shall the trial, judgment or other proceedings be stayed, arrested or in any manner affected * * * for any surplusage or repugnant allegation where there is sufficient matter alleged to indicate the crime or person charged; * * * nor for any other defect or imperfection which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

We are referred to cases discussing the propriety of instructions on lesser degrees of homicide on a trial for murder in the first degree where the only evidence in proof of the crime shows that it was committed in the perpetration of a robbery or other felony. See notes: 21 A. L. R. 628; 27 A. L. R. 1100; 102 A. L. R. 1030. Most of the cases of this kind hold that instructions on the lesser degrees of homicide should not be given. They consider the sufficiency of the evidence to justify a verdict finding that the homicide was of the lesser degree. We cannot see their applicability in support of petitioner's contention in the case before us. We have no evidence on the question of the petitioner's guilt, but only the facts confessed by the plea of guilty of murder in the second degree. It is worthy

of note, however, that the cases to which we have just referred do not hold that a conviction of murder in the second degree on evidence showing murder by poison or in the perpetration of a felony is void for want of jurisdiction. Indeed, in perhaps a majority of such cases it is held that a defendant convicted of the lesser degree of the crime on evidence showing guilt of the higher degree, cannot complain even on appeal. See State v. Yargus, 112 Kan. 450, 211 P. 121, 27 A. L. R. 1093, and cases cited.

Petitioner relies on Ex parte Dickson, 36 Nev. 94, 133 P. 393, but we think it distinguishable from the case at bar. There, the petitioner for habeas corpus, had entered a plea of guilty of petit larceny on an indictment charging that he had stolen a hog, a crime which by statute was grand larceny irrespective of the value of the animal. As the crime charged was not divisible into degrees, it was held that the lesser crime of petit larceny was not included in the charge, and that the court did not have jurisdiction to accept the plea or impose the sentence. We may concede that this case would be in point if the information in the case at bar charged merely that the petitioner killed the deceased while perpetrating a robbery. But that, as we have shown, is not the fact. When the unnecessary allegation of a robbery is eliminated, the information is complete and legal as a charge of murder in the first degree and includes the charge of lesser degrees. In the Dickson case, if the allegation that defendant stole a hog had been eliminated from the indictment, there would have been left no charge of crime that could be confessed by a plea.

The demurrer will be sustained, and the petition dismissed.

*Petition dismissed.*

RINER, Ch. J., and BLUME, J., concur.