STATE ex rel. JOHN F. KELLY v. HENRY WOLFER.[1]

November 15, 1912.

Nos. 17,991—(268).

**Habeas corpus — trial of appeal.**

Since an appeal in habeas corpus proceedings is, by R. L. 1905, § 4602, required to be tried in this court in the same manner "as if the writ had originally issued out of" this court, errors and irregularities occurring on the trial below need not be considered.

**Judgment — attack by habeas corpus.**

Where a court has jurisdiction of the person and the subject-matter, and could render a judgment upon a showing of any sufficient state of facts, any judgment which it may render, however erroneous, irregular, or unsupported by evidence, will be sustained as against an attack by habeas corpus.

**Judgment — sentence to reformatory — attack by habeas corpus.**

Under R. L. 1905, § 5454, authorizing the court to sentence to the reformatory any person not less than sixteen nor more than thirty years of age, etc., and who has been convicted of a crime punishable by imprisonment in the state prison, the fact that a judgment of conviction of such a crime, upon which the defendant is sentenced to the reformatory, fails to state

---

[1] Reported in 138 N. W. 315.

the age of the defendant, does not render it subject to attack on habeas corpus.

**Act valid.**

R. L. 1905, § 5455, amended by Laws 1911, c. 61, authorizing the board of control to transfer prisoners from the reformatory to the state prison, and vice versa, is not unconstitutional, as constituting a legislative attempt to vest administrative officers with judicial functions.

Upon the petition of John F. Kelly, the district court for Washington county issued its writ of habeas corpus directing Henry Wolfer, as warden of the Minnesota state prison, to have the body of Paul C. Kelly before the court. The substance of the petition for the writ is stated in the opinion. After hearing, the court, Stolberg, J., made findings and as conclusion of law quashed the writ and remanded Paul C. Kelly to the custody of respondent. From the order quashing the writ and remanding the prisoner, petitioner appealed. Affirmed.

*John F. Kelly,* pro se.

*Lyndon A. Smith,* Attorney General, and *C. Louis Weeks,* Assistant Attorney General, for respondent.

PHILIP E. BROWN, J.

On June 23, 1910, one Kelly was convicted, in the district court of Hennepin county, of the crime of forgery in the second degree, and was then and there sentenced to imprisonment in the state reformatory until he should "thence be discharged by due course of law or by competent authority." On February 23, 1912, by order of the state board of control, made pursuant to the authority vested in them by R. L. 1905, § 5455, the said Kelly was transferred to the state prison. On July 22, 1912, a writ of habeas corpus in his behalf was sued out of the district court of Washington county—the petition therefor alleging that his imprisonment was illegal and without authority of law, in that (1) there was an agreement between the prisoner and the trial judge, prior to the former's conviction, which was upon a plea of guilty, that his imprisonment under such conviction should not exceed eighteen months, and that the plea of guilty was entered in reliance upon such agreement, and in order

119 M.—24.

that the prisoner might be cured of a drug habit; (2) that the judgment of conviction did not state on its face that the prisoner was "not less than sixteen nor more than thirty years of age," and thus failed to show the age limit of sentence to the reformatory, while in fact the prisoner was over thirty years of age at the time of his sentence; (3) that the law authorizing the prisoner's transfer to the state prison was and is unconstitutional and void, and that, as there is no law for his return to the reformatory, he should be discharged. The court below quashed the writ, and remanded the prisoner to the custody of the respondent; and this is an appeal from its order in such regard.

1. The appellant complains here of certain rulings below; but it is not necessary either to state or decide the questions thus sought to be raised, for under R. L. 1905, § 4602, an appeal in habeas corpus proceedings is tried in this court in the same manner, to quote the statute, "as if the writ had originally issued out of " this court. See 1 Dunnell, Minn. Dig. § 4142; State v. Riley, 116 Minn. 1, 133 N. W. 86. In view, however, of the fact that the case was submitted to this court upon the record made in the proceedings below, and precisely as if the trial here were upon an ordinary appeal, we will consider the point most earnestly urged by the relator in this connection, namely, that the bill of exceptions states that the original "writ, warrant, or other written authority" under which the prisoner was detained was not produced and exhibited to the trial court, to the extent of saying that the record does not bear him out in this contention.

2. Coming, then, to the first and second grounds of discharge alleged in the petition, as above stated, we find that neither of them can be sustained. When one is confined under the final judgment of a court, he can be released on habeas corpus only for jurisdictional defects. Such writ cannot be allowed to perform the function of a writ of error or appeal. If the court has jurisdiction of the person and the subject-matter, and could render a judgment upon a showing of any sufficient state of facts, any judgment which it may render, however erroneous, irregular, or unsupported by evidence, will be sustained as against an attack by habeas corpus. 1 Dunnell,

Minn. Dig. § 4129; State v. Riley, supra. Tested by these rules, the grounds stated in the first and second subdivisions of the petition for the writ in the instant case cannot be sustained.

Furthermore, in regard to the second of these contentions, the records show that the prisoner was examined by the court on oath concerning his age before imposing sentence, and that he stated it to be twenty-nine years. The relator contends that this cannot be considered, or is at least open to contradiction by evidence introduced by him below to the effect that there was no such testimony; the basis of such contention being that the minutes of the court which showed such testimony were not signed by the judge. All that is necessary, however, to prove the minutes of a court, is a copy thereof, attested by the clerk and under the seal of the court, and this is what we find the record in the instant case.

And again, with regard to this second ground for a discharge alleged by the relator, we think that the customary presumption in favor of the regularity of a judgment must here prevail. See Ex parte Marlow, 75 N. J. L. 400, 68 Atl. 171; Ex parte Wilson, 114 U. S. 417, 5 Sup. Ct. 935, 29 L. ed. 89. See, also, In Matter of Gregory, 219 U. S. 218, 31 Sup. Ct. 143, 55 L. ed. 184. We have no statute in this state requiring that the judgment shall contain anything whatever concerning the age of the prisoner, and in the absence of such a statute we do not think any recital in this regard is necessary in order to validate a sentence to the reformatory. One might as well argue that, because our statutes forbid the sentence of a minor under a certain age to the state prison, every judgment of conviction for a crime punishable by confinement in such prison must show that the prisoner is over that age. There is nothing that militates against our conclusion in this regard in the cases cited and relied upon by the relator, namely, State v. Whittier, 108 Minn. 447, 122 N. W. 319; State v. Billings, 55 Minn. 467, 57 N. W. 206, 794, 43 Am. St. 525; State v. Kinmore, 54 Minn. 135, 55 N. W. 830, 40 Am. St. 305, and some others. None of these cases are in point, for all of them bear upon the question of jurisdiction of the proceedings. Here there was unquestionably jurisdiction of the person and the subject-matter, and if the sentence of the prisoner to the re-

formatory was improper it involved a mere error or irregularity, which is not ground for discharge on habeas corpus. Ryan v. Rhodes, 167 Ind. 121, 76 N. E. 249, 78 N. E. 330; People v. Superintendent, 46 Misc. 131, 93 N. Y. Supp. 218.

3. The relator's last contention is that the statute, R. L. 1905, § 5455, authorizing the board of control to transfer prisoners from the reformatory to the state prison, is invalid under Const. Art. 3, § 1, as being a legislative attempt to authorize purely ministerial officers to exercise judicial functions. The generic question raised by this contention is not a novel one. It is long since that criminology gave us our modern conception of criminality, from which has arisen an ever-increasing tendency to regard "punishment" for crime as being not so much compensatory as reformatory, and from this tendency, in turn, have sprung laws greatly amplifying and extending the administrative functions incident to the execution of the penalties prescribed by law for crime and imposed by the courts upon those who have incurred the same. It is not at all strange then that, in the course of legislative attempts in the various states of the Union to meet the requirements of this extended administrative system, laws should sometimes be passed which at least seem to attempt to vest administrative officers with powers properly appertaining to the judicial or executive departments of the government. Bitter attacks have been made upon some of these laws, most notably upon the so-called indeterminate sentence system, with its credits for good behavior, upon the parole system, and upon the prison transfer system; such attacks being grounded variously upon the contentions that the legislation assailed attempts to vest administrative officers with the judicial power of sentence or the executive power of pardon, or else is an unauthorized delegation of legislative powers. See Murphy v. Com. 172 Mass. 264, 52 N. E. 505, 43 L.R.A. 154, 70 Am. St. 266; Com. v. Brown, 167 Mass. 144, 45 N. E. 1; Ex parte Marlow, supra; Miller v. State, 149 Ind. 607, 49 N. E. 894, 40 L.R.A. 109. In each of these cases the indeterminate sentence system was sustained, though not without serious consideration, and, in Indiana, some dissent. See, also, Fite v. State, 114 Tenn. 646, 88 S. W. 941, 1 L.R.A.(N.S.) 520, 4 An. Cas. 1108, where the credit system

was sustained, subject to certain limitations, and the cases were reviewed, and In re Conditional Discharge of Convicts, 73 Vt. 414, 51 Atl. 10, 56 L.R.A. 658, where the validity of the parole system was considered. Likewise see In re Murphy, 62 Kan. 422, 63 Pac. 428, upholding the Kansas prison transfer act, and People v. Mallary, 195 Ill. 582, 63 N. E. 508, 88 Am. St. 212, declaring a somewhat similar law invalid. By citing these cases, however, we do not mean either to approve or disapprove of their holdings upon the specific questions therein involved. We cite them merely because they are pertinent to the considerations to which we have adverted and involve the same general principles which we must apply in the instant case.

Coming, then, to the matter immediately before us, the argument against the validity of the law in question is, in substance, as follows: That the legislature has no power to vest a ministerial body with judicial functions; that the imposing of a statutory penalty for a crime is a judicial function, and where the statute prescribes alternate penalties the selection of the penalty which is to be imposed in a particular case is also a judicial function; that the Minnesota statutes under consideration authorize confinement either in the reformatory or the state prison, it being within the discretion of the court which punishment shall be inflicted; but that the statute assailed authorizes the board of control subsequently to transfer from the reformatory to the state prison, and hence the final choice between the two penalties provided by statute is left to such board, who, in effect, are thus authorized either to review the action of the court in choosing the reformatory, instead of the state prison, as the place of the prisoner's confinement, or else to impose a new criminal penalty without judicial trial, for matters occurring subsequently to the original commitment. We think, however, that this argument is fallacious.

R. L. 1905, § 5052, provides: "Forgery in the second degree shall be punished by imprisonment in the state prison for not more than ten years." Under this statute alone—Laws 1911, p. 412, c. 298, providing for indeterminate sentences, not being in force at the time of the conviction in the present case—it would have been the

duty of the court, upon the prisoner's conviction, to sentence him to the state prison for a definite term of not more than ten years. But R. L. 1905, § 5454, provides: "Any person not less than sixteen nor more than thirty years of age, convicted of a crime punishable by imprisonment in the state prison, and never before sentenced to a state prison or reformatory, may be sentenced to the reformatory, which sentence shall be without limit as to time. * * * Such imprisonment not to exceed the maximum term." And section 5451 provides that in similar cases, with some slight difference as to age not material here, the sentence may be to the state prison on the reformatory plan "in like manner and on like conditions as are provided for sentence to the reformatory."

These two statutes, taken together, purport to authorize the court, in its discretion, to sentence the prisoner either to the reformatory or the state prison for a nominally indefinite term, not to exceed ten years, for the crime here involved; such term, however, being legally considered to be ten years, subject to a prior termination upon certain contingencies not necessary here to mention. See Murphy v. Com. supra; Miller v. State, supra. Under the three statutes which we have cited, therefore, it appears that the penalty provided by law for the crime here involved was, to a certain extent, in the alternative, thus calling for the exercise of judicial discretion in determining which should be imposed.

But these statutes must be read in connection with still another statute, namely, R. L. 1905, § 5455. This section, as it stood at the time of the prisoner's conviction, and also as amended by Laws 1911, p. 80, c. 61, is as follows: "The board of control may transfer from the reformatory to the state prison, from the state prison to the reformatory, and from the state training school to the reformatory whenever, in its judgment, such transfer will be advantageous to the person transferred, or to the institution from which such transfer is made"—with certain other provisions not here material.

Therefore, by reading this section into the sentence of the court, which must be done (Miller v. State, supra; Rich v. Chamberlain, 107 Mich. 381, 65 N. W. 235; In re Murphy, supra), the only alternative feature of the penalty prescribed by the statutes lies in the

length and character of the term, that is, whether for a definite period of not more than ten years, or for ten years, subject to a possible prior termination; and when the prisoner in this case was sentenced to the reformatory, the court exercised all the judicial discretion vested in it by the statutes or the Constitution, for, whether the sentence is to the reformatory or to the state prison, the board of control, which has charge of both institutions, has power under section 5455 to transfer from the one to the other.

But it is this power of transfer that is attacked as involving an exercise of judicial functions, and if it really does call for the exercise of judicial, as distinguished from merely administrative or regulatory, functions, it cannot, of course, be sustained. We think, however, that the power of transfer thus conferred upon the board is purely administrative.

As we have already indicated, one of the principal aims, if, indeed, not the predominant one, of our penal system, is reform, and such is the policy which controls the conduct and management of the state prison no less than of the reformatory. Practically every law enacted in this state for many years, relative to sentence and imprisonment for crime, evidences this aim; and this conception of "punishment" of necessity involves an extension of the administrative side of the penal system, and imperatively demands greater freedom and wider powers on the part of the executive and administrative officers in carrying out the sentences of the courts. This new conception of "punishment"—new in the history of jurisprudence, but old and well established in this state—likewise has a direct bearing upon the office of a judicial sentence, which is now and always has been merely to direct that the punishment provided by the law be administered to the person convicted of the crime. Anciently, when, under the barbarous doctrine of an eye for an eye and a tooth for a tooth, "punishment" was deemed to be, as the word implies, largely compensatory, the natural and logical conception of a sentence for a crime was that the "punishment" should be nicely graduated to the nature and circumstances of the offense; this idea being reflected in the Constitutions of some of the states by a provision that the punishment shall be proportionate to the offense, and this provision like-

wise being interpreted as requiring that the prisoner should suffer in proportion to the lightness or the enormity of his crime. And so long as this compensatory conception of "punishment" obtained, it might seem logically to follow that the adjudging of the penalty with great certainty and precision was essential and necessarily involved the exercise of judicial functions, and that any law attempting to deprive the courts of any of their powers in this regard would be an invasion of the province of the judiciary. The modern conception of "punishment," however, and the one that, so far as we can ascertain, has always obtained in this state, takes practically no account of compensation; the only survival thereof being found in the attempt at prevention by means of deterring examples and by confinement of and restrictions upon criminals considered dangerous to be at large, which latter system, especially when viewed from the criminological viewpoint is closely analogous to the system of confinement of and restraint upon persons of unsound mind.

Obviously, then, the office of a judicial sentence for crime cannot, under this conception of "punishment," be altogether the same as when society demanded payment, complete and more or less in kind, for infractions of its laws. No longer is proportionate punishment to be meted out to the criminal, measure for measure; but the unfortunate offender is to be committed to the charge of the officers of the state, as a sort of penitential ward, to be restrained so far as necessary to protect the public from recurrent manifestations of his criminal tendencies, with the incidental warning to others who may be criminally inclined or tempted, but, if possible, to be reformed, cured of his criminality, and finally released, a normal man, and a rehabilitated citizen.

Such is the province of judicial sentence for crime in many of the states, and it should be the same, we think, in all of them. In any event, we are satisfied that this conception of a sentence is the only one that can obtain in this state. Neither in our Constitution nor in our statute law do we find any remnant of the compensatory idea of punishment. Our Constitution does not contain any provision which, by any process of construction, requires penalties to be weighed in the balance with crime. It follows, then, that a much

larger field of operation has necessarily been thrown open to those to whose charge criminals are committed for the purpose of the execution of the sentences pronounced against them, and we will say, without further preliminary, that so far as we have found it necessary in this case to examine our laws in this regard, including the transfer law herein assailed, we have not found them obnoxious to any constitutional objection. As we have had occasion recently to say: "Constitutions are not made for existing conditions * * * nor in the view that the state of society will not advance or improve, but for future emergencies and conditions, and their terms and provisions are constantly expanded and enlarged by construction to meet the advancing and improving affairs of men." State v. City of Mankato, 117 Minn. 458, 465, 136 N. W. 264, 266, quoting from the opinion of Mr. Justice Brown in Elwell v. Comstock, 99 Minn. 261, 109 N. W. 113, 698, 7 L.R.A.(N.S.) 621, 9 An. Cas. 270.

Failure to heed these weighty words would necessarily result in political and social stagnation. The changes in the conceptions of "punishment" and of sentence for crime, to which we have adverted at some length, necessarily require that the constitutional division of the government into three departments should receive, so far as the question here under consideration is concerned, a more liberal construction than might have been logically possible when this provision was inserted in the first American Constitution, at which time the law had not, perhaps, abandoned the compensatory conception of punishment. We hold, therefore, that R. L. 1905, § 5455, authorizing the board of control to transfer to the state prison a prisoner originally sentenced to the reformatory, or vice versa, does not violate Const. Art. 3, § 1; for we consider this power to be a mere matter of administration and control, in thorough keeping with the broad and humane policy underlying our penal system. In support of this conclusion we might refer to the provisions of our statutes which indicate that the reformatory and the state prison are merely branches of one great institution, from which it might be argued that, as between the two, the place of confinement is not a judicial matter (see In re Murphy, supra; Rich v. Chamberlain, supra; O'Brien v. Barr, 83 Iowa, 51, 49 N. W. 68); and likewise we might,

for the purpose of distinguishing them, discuss the case of People v. Mallary, supra, and other cases which may seem to be more or less in conflict with the conclusion which we have reached. But to do so would be but to invite controversy, predicated largely upon technical refinements as to the meaning of words and terms, such as "penal" and "infamous." We will say, therefore, that while we have carefully examined these statutes and cases, as well as the other cases to which we have been cited, and also many additional cases which we have found in the course of our own research, we base our conclusion primarily upon an independent consideration of our own Constitution and statutes, which we have endeavored to interpret in the light of the ideals and conceptions of the people of this state as reflected in its written laws.

It appears from the record that the prisoner in this case was transferred to the state prison upon his own request; but we have not allowed this fact in any way to influence our determination of the case, and the conclusion which we have reached is in no wise based thereon.

Order affirmed.