## STATE v. NORMAN MEYER.[1]

April 14, 1949.

No. 34,969.

---

[1]Reported in 37 N. W. (2d) 3.

287

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone* and *Lowell J. Grady,* Assistant Attorneys General, and *Everett L. Young,* County Attorney, for the State.

*H. A. Knobel, William F. Odell, William B. Odell, Ray G. Moonan, W. L. Heinen, Kermit J. Lindmeyer,* and *John M. Fitzgerald,* for defendant.

*Paul C. Thomas* and *Maynard E. Pirsig* filed a brief as *amici curiae* on behalf of the Youth Conservation Committee of the Minnesota State Bar Association.

KNUTSON, JUSTICE.

Defendant was arraigned upon an information filed upon his application under M. S. A. 628.32, charging him with having committed the crime of burglary in the third degree. The information alleges that the crime was committed on December 18, 1948. Defendant became 18 years of age on August 13, 1948. He was arraigned on January 27, 1949. Prior to arraignment the court appointed counsel to represent defendant. He entered a plea of guilty to the crime charged in the information. Thereafter an adjournment was taken, and later, when the county attorney moved for imposition of sentence, defendant, being then represented by additional counsel, inquired of the court whether it proposed to sentence defendant under and pursuant to the provisions of L. 1947, c. 595, commonly known as the Youth Conservation Act. When informed by the court that there was no other alternative under the law, defendant's counsel moved for an arrest of judgment and objected to the imposition of sentence under that chapter on the ground that the act was unconstitutional. The court sustained the objection, granted defendant's motion, and, with the consent of the state and defendant, certified to this court the questions as to the constitutionaliy of the act.

The Minnesota Youth Conservation Act (L. 1947, c. 595 [M. S. A. 260.125]) is patterned after the Youth Correction Authority Act adopted by the American Law Institute in 1940.[2] (References herein are to sections found in M. S. A.) A number of changes were made in our act from the model code, intending to adapt it to our indeter-

[2]See, American Law Institute, Restatement of the Law, Official Draft of Youth Correction Authority Act, and Vol. XVII of proceedings of the American Law Institute.

minate sentence and our existing criminal procedure and also to include within its scope provisions for the prevention of delinquency in youth, as well as the rehabilitation of youth who have committed violations of our laws. It also extends the provisions of the act to juvenile court cases which are not included in the model act. The purpose of the model act (§ 1)[3] is somewhat more limited than our statute, § 260.125, subd. 1.[4]

So far as the method of handling young people found guilty of violation of law is concerned, the purposes of the two acts are the same. Acts similar to ours were adopted in California in 1941, in Wisconsin in 1947,[5] and in Massachusetts in 1948.[6]

A brief description of the act may be helpful to an intelligent understanding of its validity. Under the act there is created a youth conservation commission (§ 260.125, subd. 2) consisting of five persons, including the director of the division of public institutions, the chairman of the state board of parole, and three others appointed by the governor with the consent of the senate. One of the appointed members is designated as chairman by the governor. Such chairman is the full-time director of the commission. (Subd. 3.) The act provides for a salary for the director (Subd. 7) and per diem compensation for the other two appointive members, but no additional

[3]"The purpose of this Act is to protect society more effectively by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found guilty of violation of law. To this end it is the intent of the legislature that the Act be liberally interpreted in conformity with its declared purpose, and that if any part of the Act be held unconstitutional the remainder shall nevertheless be valid and operative."

[4]"The purpose of this section is to protect society more effectively by providing a program looking toward the prevention of delinquency and crime by educating the youth of the state against crime and by substituting for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found delinquent or guilty of crime."

[5]Wisconsin Laws 1946-1947, c. 546.

[6]Acts and Resolves of Massachusetts 1948, c. 310.

compensation for the director of the division of public institutions or the chairman of the state board of parole. (Subd. 3.)

The act applies to two distinct groups: Those found delinquent by juvenile courts (§ 260.125, subd. 14, and § 260.13) and those convicted of a felony or a gross misdemeanor in the district courts who are under the age of 21 years. (§ 260.125, subd. 13.)

The act does not affect the procedure governing trial or hearing. It applies only when there has been a conviction or a plea of guilty and affects only the disposition that may be made of the offender after such conviction. It does not affect the power of the trial court to grant a new trial or set aside its judgment by reason of surprise, fraud, perjury, or otherwise, nor does it affect the right of appeal. (Subd. 30.)

With respect to juvenile court cases, the principal change introduced by the act consists of eliminating the power of the juvenile court to commit a minor to the state training school for boys at Red Wing or to the home school for girls at Sauk Center, and requires the court instead to commit the youth to the commission. (§ 260.13 as amended by L. 1947, c. 595, § 2.) The juvenile court retains authority to place the youth on probation or to make such other disposition of the case as the court may decide, not involving commitment to a state school.

The district court cannot commit a youth under the age of 21 years to a penal institution, but must sentence him to the commission. The court retains authority to place the youth on probation on any terms it sees fit after a presentence investigation has been made. Unless the court places the youth on probation, the court must commit the offender to the commission for the maximum term prescribed by the statute creating the crime for which the youth was committed. (§ 260.125, subd. 13.)

Upon commitment by a juvenile court, the commission has the right to retain control of the youth until he or she reaches the age of 21 years. At that time the offender must be discharged in any event. (Subd. 26.) The commission may confine the youth in the state training school for boys or the home school for girls or place

him or her on probation, or, after confinement, on parole on such terms as it may prescribe, having in mind the best interests of the youth and society. (Subd. 19[a], [c to g].) It cannot confine the youth in a penal institution. (Subd. 14.) It may discharge the youth from its control entirely before the age of 21 is reached. (Subd. 26.)

When commitment is from a district court upon conviction of a felony or gross misdemeanor, the commission is given authority to confine the youth in a penal institution or place him on probation or, after confinement, on parole, on such terms as it may prescribe. (Subd. 19.) The youth must in any event be discharged on the expiration of the term for which the court sentenced him. (Subd. 26.) If before that time he reaches his 25th birthday, he must then be discharged, unless the commission finds that to do so would be dangerous to the public, in which event he is turned over to the regular adult criminology agencies. (Subd. 27.)

Whether the commitment is from a juvenile court or district court, before treatment is prescribed by the commission it must make a study of the youth. (Subd. 18.)

■ Defendant contends that the act violates Minn. Const. art. 4, § 27, which provides that "No law shall embrace more than one subject, which shall be expressed in its title." The title to the act is as follows:

"An act relating to prevention of delinquency and crime; providing for methods of treatment, training and education of young persons, including persons under 21 years of age found delinquent or guilty of crime; creating a youth conservation commission; appropriating funds therefor; and amending Minnesota Statutes 1945, Section 260.13."

The requirements of this constitutional provision are well stated in C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 509, 297 N. W. 9, 13, as follows:

"The subject of a statute is the matter to which it [art. 4, § 27] relates and with which it deals. A subject embraces all provisions

which are germane to it; they may be parts of it, incident to it, or means auxiliary to the end in view. The subject must be single; the provisions by which the object is accomplished may be multifarious. The constitutional provision ought to be practically and liberally construed."

In Johnson v. Harrison, 47 Minn. 575, 577, 578, 50 N. W. 923, 924, 28 A. S. R. 382, we said:

"* * * To constitute duplicity of subject, an act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the act should embrace some one general subject; and by this is meant, merely, that all matters treated of should fall under some one general idea, be so connected with or related to each other, either logically or in popular understanding, as to be parts of, or germane to, one general subject. * * * All that is required is that the act should not include legislation so incongruous that it could not, by any fair intendment, be considered germane to one general subject. * * * The title was never intended to be an index of the law."

These rules have been stated so often that it seems needless to elaborate upon them here. See, also, State v. Cassidy, 22 Minn. 312, 21 Am. R. 765; State ex rel. Schulman v. Phillips, 73 Minn. 77, 75 N. W. 1029; Lien v. Board of Co. Commrs. 80 Minn. 58, 82 N. W. 1094; State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N. W. 297; 6 Dunnell, Dig. & Supp. § 8910.

Tested by these rules, we have no difficulty in finding that the act meets the requirements of Minn. Const. art. 4, § 27.

◼ Defendant next contends that the act is in violation of Minn. Const. art. 3, § 1, and art. 6, §§ 1, 2, and 5, in that it violates the separation of powers of the three branches of our government, and that it is an invasion of the judicial powers vested in the courts by our constitution, and also that it deprives the supreme court and district courts of their "inherent powers." These claims will be considered together.

We fully recognize that it is as important today as it ever was to maintain an impartial and independent judiciary as one of the three coördinate branches of our government, but in determining whether the legislative branch is encroaching upon the judicial it is fundamental that we keep in mind the distinction between those functions which are inherently judicial in their nature and those acts which the judiciary perform within the limits prescribed by the legislature.

The legislature can, and always has, fixed and determined the punishment that shall be imposed for a violation of law and the limits of discretion vested in the courts in the imposition of the sentence. It determines whether the law violator shall be committed to a penal institution at all, or if some other form of punishment, such as a fine, shall apply. It may determine the minimum as well as the maximum sentence; it may permit the court to fix the length of the sentence within the maximum term prescribed or it may prescribe a minimum which is mandatory and permit the court to fix the maximum, or it may provide a maximum and permit an administrative body to determine how long the violator shall serve; it may require the court to sentence violators to certain penal institutions or grant the court authority to determine which of such institutions such violator may be committed to, or it may vest in an administrative official the power to determine which institution shall be used[7]; and it may grant an administrative board the authority to supervise a convicted person, either within or without a penal institution. It may also grant the court power to suspend a sentence and may limit such power to certain cases and deny it as

_____

[7]Cf. 18 USCA § 4082 (formerly § 753f), providing that persons convicted of an offense against the United States shall be committed to the custody of the attorney general, who shall designate the place of confinement, and afterwards transferred from one institution to another. The constitutionality of this statute was upheld in Stewart v. Johnston, 97 F. (2d) 548. L. 1935, c. 207, § 2, provided that all offenders punishable by imprisonment in the state prison or the reformatory should be sentenced "to the state penal institutions." It created a state board for the classification of criminals to determine what institution the prisoner should be confined in. Repealed by L. 1939, c. 71.

to others.[8] These are but a part of the functions performed by the courts within the limits prescribed by the legislative branch of the government.

A good statement of the law on this subject is found in State v. Dugan, 84 N. J. L. 603, 609, 89 A. 691, 694, where the court, in upholding the constitutionality of the New Jersey indeterminate sentence law, said:

"* * * The pronouncing of a sentence is, undoubtedly, a judicial act. But the punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, under head of 'Judgment and its Consequences,' 'the court must pronounce that judgment which the law hath annexed to the crime.' It is further said that the statute in effect curtails the judicial discretion, to be exercised by the judge. Granting that it does, it is, nevertheless, the valid exercise of legislative power under the constitution over crimes."

See, also, Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 28 A. (2d) 897, 143 A. L. R. 1473.

In State v. Moilen, 140 Minn. 112, 115, 167 N. W. 345, 346, 1 A. L. R. 331, we said:

"It is the exclusive province of the legislature to declare what acts, deemed by the lawmakers inimical to the public welfare, shall constitute a crime, to prohibit the same and impose appropriate penalties for a violation thereof. With the wisdom and propriety thereof the courts are not concerned."

---

[8]Authority to suspend sentences was granted to courts of record of this state by L. 1909, c. 391. It was limited to cases where the maximum penalty did not exceed five years in the state prison. This was extended by L. 1921, c. 298, to include cases where the maximum penalty did not exceed ten years, and by L. 1947, c. 243, to all cases where the punishment is not life imprisonment. In the absence of statute conferring it, there is no inherent power in the courts to suspend sentence. Ex parte United States, Petitioner, 242 U. S. 27, 37 S. Ct. 72, 61 L. ed. 129, L. R. A. 1917E, 1178, Ann. Cas. 1917B, 355; 6 Minn. L. Rev. 363.

For further authorities along this line, see, 15 Am. Jur., Criminal Law, § 507; 24 C. J. S., Criminal Law, § 1975.

The constitutionality of the California act, which is in most respects similar to ours, was upheld against contentions identical to those raised here in In re Herrera, 23 Cal. (2d) 206, 211, 143 P. (2d) 345, 347,[9] where the court said:

"There is no unconstitutional delegation of legislative or judicial power, as petitioners contend, in thus vesting power in the Authority to determine, within the limits prescribed, how long convicted persons shall be detained and how they shall be treated after commitment. The standards governing the Authority in determining the kind of treatment and release of such persons are well within constitutional requirements."

The present act is similar in many respects to the indeterminate sentence law, under which the state board of parole determines how long a convicted offender must serve within statutory limits prescribed by the legislature or the maximum sentence imposed by the court in those cases where the legislature has conferred a discretionary power upon the courts to fix the maximum. The constitutionality of laws establishing indeterminate sentences has long since been established. In State v. Duff, 144 Iowa 142, 144, 122 N. W. 829, 830, 24 L.R.A.(N.S.) 625, 138 A. S. R. 269, where the Iowa indeterminate sentence law was under attack, almost identical objections to its constitutionality were raised as have been raised by defendant against our youth act. The Iowa court said:

"'* * * The defendant says that the statute under which the defendant was sentenced is unconstitutional and void, 'first, because it takes away the power vested in the courts, and vests it in officers appointed by the Governor; second, it delegates the power of pardon and commutation of sentence vested by the Constitution in the Governor to other persons.' The defendant says 'that the statute under which the defendant was sentenced not only forced the district

---

[9]For decision in same case in district court of appeals, see Ex parte Herrera, 137 P. (2d) 82.

judge to pass sentence for ten years, but forced him to hand the defendant over to the control of three men, who may deprive the defendant of his liberty and citizenship for many years.' We are unable to see the force of this contention. That the Legislature has the power to fix the punishment for crime, with the limitation only that it be not cruel or excessive, will hardly be seriously questioned. And if the Legislature has such power, it may surely fix a definite and certain term of imprisonment for any particular crime, and this without placing any discretion in the hands of the court whose duty it is to carry out the legislative mandate. Thus the Legislature may undoubtedly provide that murder in the first degree shall be punishable with death, or with life imprisonment, as is provided by our own Code, and if this may be done, it must necessarily follow that the indeterminate sentence statute violates no constitutional right of the defendant, and violates no constitutional guaranty of the State in providing that a prisoner convicted of crime shall be sentenced to the penitentiary for a period not exceeding the maximum statutory penalty for the crime."

Much the same questions were under consideration in State ex rel. Kelly v. Wolfer, 119 Minn. 368, 138 N. W. 315, 42 L.R.A. (N.S.) 978, Ann. Cas. 1914A, 1248. In that case, the constitutionality of R. L. 1905, § 5455, which authorized the state board of control to transfer prisoners from one penal institution to another, was challenged. Kelly had been committed to the state reformatory and was later transferred to the state prison by the state board of control. His contention was that the act, being a legislative attempt to authorize purely ministerial officers to exercise judicial functions, was unconstitutional. In upholding the law, we inferentially recognized the constitutionality of the indeterminate sentence act, saying (119 Minn. 373, 138 N. W. 318) :

"* * * the argument against the validity of the law in question is, in substance, as follows: That the legislature has no power to vest a ministerial body with judicial functions; that the imposing of a statutory penalty for a crime is a judicial function, and where

the statute prescribes alternate penalties the selection of the penalty which is to be imposed in a particular case is also a judicial function; that the Minnesota statutes under consideration authorize confinement either in the reformatory or the state prison, it being within the discretion of the court which punishment shall be inflicted; but that the statute assailed authorizes the board of control subsequently to transfer from the reformatory to the state prison, and hence the final choice between the two penalties provided by statute is left to such board, who, in effect, are thus authorized either to review the action of the court in choosing the reformatory, instead of the state prison, as the place of the prisoner's confinement, or else to impose a new criminal penalty without judicial trial, for matters occurring subsequently to the original commitment. We think, however, that this argument is fallacious."

For the law generally, see 15 Am. Jur., Criminal Law, § 520; 24 C. J. S., Criminal Law, § 1975.

We long ago abandoned the ancient doctrine of compensatory punishment for crime and adopted the more modern theory under which one of the primary aims of sentences imposed upon law violators is to ultimately reform and rehabilitate the offender so that he can be returned to society as a useful and law-abiding citizen. Establishment of our juvenile court, our system of indeterminate sentences with supervision vested in the state board of parole or our system of suspended sentences and probation, and other laws of this kind are intended to accomplish that purpose. We recognize this change in State ex rel. Kelly v. Wolfer, *supra,* where we said (119 Minn. 372, 138 N. W. 317):

"* * * It is long since that criminology gave us our modern conception of criminality, from which has arisen an ever-increasing tendency to regard 'punishment' for crime as being not so much compensatory as reformatory, and from this tendency, in turn, have sprung laws greatly amplifying and extending the administrative functions incident to the execution of the penalties prescribed by law for crime and imposed by the courts upon those who have in-

curred the same. It is not at all strange then that, in the course of legislative attempts in the various states of the Union to meet the requirements of this extended administrative system, laws should sometimes be passed which at least seem to attempt to vest administrative officers with powers properly appertaining to the judicial or executive departments of the government. Bitter attacks have been made upon some of these laws, most notably upon the so-called indeterminate sentence system, with its credits for good behavior, upon the parole system, and upon the prison transfer system; such attacks being grounded variously upon the contentions that the legislation assailed attempts to vest administrative officers with the judicial power of sentence or the executive power of pardon, or else is an unauthorized delegation of legislative powers. See Murphy v. Com. 172 Mass. 264, 52 N. E. 505, 43 L. R. A. 154, 70 Am. St. 266; Com. v. Brown, 167 Mass. 144, 45 N. E. 1; Ex parte Marlow [75 N. J. L. 400, 68 A. 171], supra; Miller v. State, 149 Ind. 607, 49 N. E. 894, 40 L. R. A. 109. In each of these cases the indeterminate sentence system was sustained, though not without serious consideration, and, in Indiana, some dissent."

The Youth Conservation Act is only another attempt to find the most effective method of accomplishing the desirable object of rehabilitating and reforming youthful offenders. It recognizes that the formative years of youth offer the greatest opportunity for reformation and that youthful offenders often can be handled more effectively by some method other than commitment to a penal institution, and still it safeguards society by providing means whereby those who are a menace may be confined the same as under prior law.

Defendant confuses the function of the court in imposing sentence with the function of determining what the sentence shall be. It has always been a legislative function to determine what the sentence shall be. Here, the sentence is commitment to the commission. The act does not become operative as to district court cases until after conviction by trial or plea of guilty. It does not encroach upon those functions which are inherently judicial, and it is not violative of the articles of our constitution mentioned in this paragraph.

■ Defendant further contends that the act is repugnant to Minn. Const. art. 5, § 4.[10] This claim rests largely upon the provision of subd. 31 of the act, which reads:

"Whenever a person committed to the Commission upon conviction of a crime is discharged from its control other than by expiration of the maximum term of commitment as provided under this section, or under the provisions of subdivision 27, such discharge shall, when so ordered by the Commission restore such person to all civil rights and shall have the effect of setting aside the conviction and nullifying the same and of purging such person thereof."

Whether the salutary purpose of removing the stigma which follows the conviction of a crime from the life of a young person who has been reformed and rehabilitated and is about to be returned to society may be accomplished without resort to the constitutional board of pardons we need not now determine. Defendant is in no position to raise that question. As a general rule, the courts will not pass upon the constitutionality of a law unless a decision on that very point becomes necessary.

"* * * a litigant may be heard to question the constitutionality of a statute only when and so far as it is being or is about to be applied to his disadvantage." State ex rel. Clinton Falls Nursery Co. v. County of Steele, 181 Minn. 427, 429, 232 N. W. 737, 71 A. L. R. 1190.

See, also, McElhone v. Geror, 207 Minn. 580, 292 N. W. 414; State ex rel. Smith v. Haveland, 223 Minn. 89, 25 N. W. (2d) 474, 174 A. L. R. 544. It is hardly conceivable that defendant will raise any question concerning the constitutionality of subd. 31 when its pro-

---

[10]So far as here material, this section provides:

"* * * he [the governor] shall have power, in conjunction with the board of pardons, of which the governor shall be *ex officio* a member, and the other members of which shall consist of the attorney general of the State of Minnesota and the chief justice of the supreme court of the State of Minnesota, and *whose powers and duties shall be defined and regulated by law,* to grant reprieves and pardons after conviction for offenses against the State, except in cases of impeachment." (Italics supplied.)

visions are invoked in his favor, and it is more inconceivable that he could claim that it is invoked to his disadvantage; but if and when he does we shall then pass upon its constitutionality. Even if subd. 31 ultimately is held to violate our constitution, it is clearly severable and would not affect the constitutionality of the rest of the act. M. S. A. 645.20; Mesaba Loan Co. v. Sher, 203 Minn. 589, 282 N. W. 823. Neither is it necessary now to determine whether the power to pardon is vested exclusively in the board of pardons under our constitution. See, State ex rel. Jaffa v. Crepeau, 150 Minn. 80, 184 N. W. 567.

It might be mentioned in passing that substantially the same purpose is accomplished under our juvenile court act by providing that the commission of an offense by a young person who comes before the juvenile court shall not be considered a crime at all. § 260.21. See, Peterson v. McAuliffe, 151 Minn. 467, 187 N. W. 226.

It is also the contention of defendant that subds. 10[11] and 19[12] of the act infringe upon the constitutional powers of the state board of pardons.

---

[11]"Every order granting probation to, committing to an institution, granting and revoking parole and issuing final discharge to any person under the control of the Commission shall be made by the Commission, and the Commission may not delegate the making of such decisions to any other body or person.

"All other powers conferred on the Commission may be exercised by the Director or through his subordinates under rules established by the Commission. Any person subjected to an order of the Director or such subordinates may petition the Commission for review."

[12]"When a person has been committed to the Commission it may (a) place him on probation under such supervision and conditions as it believes conducive to law-abiding conduct; (b) if he has been committed to the Commission upon conviction of a felony or gross misdemeanor, order his confinement to such reformatory, state prison, jail, or other place of confinement to which he might have been sentenced by the court in which he was convicted except for this section. Such reformatories, state prisons, jails or other places of confinement are hereby required to accept such persons in like manner as though they had been committed by such court; (c) if he has been committed to the Commission by a juvenile court upon a finding of his delinquency, order his commitment to the State Training School for

Acts such as our Youth Conservation Act are comparatively new in the field of criminology. However, exactly the same questions regarding constitutionality frequently have been raised against the constitutionality of laws creating parole boards or other administrative bodies having control over persons convicted of crime. These laws have been upheld almost unanimously. The argument that laws vesting in administrative boards the authority to determine how a convict should be handled after conviction interfere with the pardoning power vested in the executive or a pardon board most frequently stems from the failure to distinguish between a pardon or reprieve and a parole or probation. A pardon is the exercise of executive clemency. It completely frees the offender from the control of the state and relieves him of all legal disabilities resulting from his conviction. As a practical matter, it wipes out the conviction itself. Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 584, 28 A. (2d) 897, 899, 143 A. L. R. 1473, where the distinction is pointed out as follows:

"* * * A pardon is the exercise of the sovereign's prerogative of mercy. It completely frees the offender from the control of the state. It not only exempts him from further punishment but relieves him from all the legal disabilities resulting from his conviction. It blots out the very existence of his guilt, so that, in the eye of the law, he is thereafter as innocent as if he had never committed the offense: * * * A parole, on the other hand, does not obliterate the crime or forgive the offender. It is not an act of clemency, but a penological measure for the disciplinary treatment of prisoners who seem capable of rehabilitation outside of prison walls. It does not set aside or affect the sentence; the convict remains in the legal custody of

Boys or the Minnesota Home School for Girls and such schools shall accept such persons so committed to them; (d) order his release on parole from confinement under such supervision and conditions as it believes conducive to law-abiding conduct; (e) order re-confinement or renewed parole as often as the Commission believes; (f) revoke or modify any order, except an order of discharge, as often as the Commission believes to be desirable; (g) discharge him from its control when it is satisfied that such discharge is consistent with the protection of the public."

the state and under the control of its agents, subject at any time, for breach of condition, to be returned to the penal institution. Neither is a parole a commutation of sentence within the meaning of that term in the constitutional provision."

In Ware v. Sanders, 146 Iowa 233, 246, 124 N. W. 1081, 1085, the constitutionality of the Iowa statute creating a board of parole was challenged. In upholding it, the court said:

"* * * The constitutional objection is grounded upon the thought that it in some manner trenches upon the power vested in the Governor of the State to grant pardons, reprieves, and commutations. The objection is unsound. The power of the Governor to pardon or reprieve a criminal, or to commute a sentence pronounced by a court, is in no manner abrogated, restricted, or removed by this statute. Whether punishment may be imposed at all, and, if so, its character and extent, is a matter of statute alone; and, if the Legislature in its wisdom concludes it to be sound policy to offer a premium to good conduct and reform in a prisoner by tendering him an amelioration of the rigor of his punishment, we are unable to see in what manner this constitutes the slightest interference with the exercise of executive clemency."

In State v. Duff, 144 Iowa 142, 147, 122 N. W. 829, 830, 24 L.R.A.(N.S.) 625, 138 A. S. R. 269, the court said in upholding the indeterminate sentence as against the claim that it infringes upon the pardoning power of the executive:

"* * * That the parol [sic] of prisoners under the provisions of the indeterminate sentence law does not infringe the constitutional right of the Governor to grant pardons, reprieves, etc., is supported by the undoubted weight of authority."

This is the almost unanimous holding of the courts. The cases are collected in Annotation, 143 A. L. R. 1488.

The act does not prevent the governor or the state board of pardons from granting a pardon or a reprieve. We therefore hold

that the act, insofar as its constitutionality is now before us, does not violate Minn. Const. art. 5, § 4.

 Lastly, defendant claims that the act violates Minn. Const. art. 1, §§ 2, 6, 7, and 8, and U. S. Const. Amend. XIV.

Arguments relating to a deprivation of rights protected by Minn. Const. art. 1, § 6, merit no discussion. This section relates exclusively to rights of an accused prior to and during the trial and prior to conviction. The act does not become operative until after conviction, so none of the rights covered by § 6 are in any way affected.

Defendant's arguments respecting the other constitutional provisions mentioned in this paragraph may be summarized as follows:

(a) That a defendant committed to the commission under the act is deprived of his right to credits for good conduct available to older offenders under § 637.07, and consequently there is such discrimination as to violate the due process clause.

The answer to this is that the act is intended for his benefit, not his detriment. There is always some discrimination when classification is based on age, but so long as the classification has some reasonable basis it cannot be held unconstitutional on that account. The same argument could be made against the constitutionality of our juvenile court act. Under § 260.21, juveniles over the age of 12 years may, upon order of the juvenile court, be proceeded against as adult offenders. Those under 12 may not be. Those under 18 come within the jurisdiction of the juvenile court; those older do not. § 260.02. Prior to L. 1917, c. 397, jurisdiction extended only to persons under 17 years of age. G. S. 1913, § 7162. Prior to L. 1933, c. 184, jurisdiction of the juvenile court continued only until the child reached the age of 19 years. L. 1927, c. 192, § 2. By the 1933 act, the age limit was extended to 21 years. Undoubtedly, the legislature could have extended the jurisdiction of the juvenile court to persons under 21 if it saw fit to do so. The youth act has for its primary purpose the reformation and rehabilitation of youthful offenders. It has for its very foundation provisions beneficial to those who come within its operation. Laws

providing different punishments and methods of supervision for persons of different ages are not violative of constitutional due process. State ex rel. Boyd v. Rutledge, 321 Mo. 1090, 13 S. W. (2d) 1061; McLaren v. State, 82 Tex. Cr. 449, 199 S. W. 811; State ex rel. Schulman v. Phillips, 73 Minn. 77, 75 N. W. 1029; Annotations: 3 A. L. R. 1614; 8 A. L. R. 854.

The equal protection of the law is secured if the law operates in the same way on all who belong in the same class. State v. Heitman, 105 Kan. 139, 181 P. 630, 8 A. L. R. 848, holding that a law providing for differences in the method of handling offenders of opposite sexes does not violate the due process clause.

(b) That it deprives a person committed to the commission of the right to petition for a parole under M. S. A. c. 637, or a pardon under c. 638, and that it is therefore discriminatory.

There is nothing in the act to prevent the submission of a petition to the pardon board. The commission is vested with the power to parole now vested in the state board of parole. While it may be true that the operative methods for granting paroles may vary, there is no denial of the right to petition the commission for a parole. A similar classification based on age is found in § 638.02, permitting a person convicted of a crime who is under 21 years of age at the time of the commission of the crime to petition for a pardon extraordinary. This right is conferred on youthful offenders by the legislature, not the constitution. The classification based on age is no doubt as valid in one case as in the other.

(c) That defendant is denied his constitutional right of a definite sentence and a full, complete, and speedy trial.

The act does not affect any rights concerning trial. The sentence prescribed by the legislature is at least as definite as it is under an indeterminate sentence. In addition, it affects only the administrative supervision of the convicted person after conviction. We see no merit in this contention.

(d) That it deprives defendant of the right to notice, hearing, the right to be represented by counsel, and the right of appeal[13] or review.

None of these rights now existing are taken away. All rights of appeal, new trial, stay of sentence, or bail previously existing are preserved by the act. (Subd. 30.) The same questions regarding a right to a hearing have been raised and rejected in cases involving the revocation of suspensions of sentence and revocation of parole or probation and conditional pardons. There is no constitutional right to a hearing in proceedings subsequent to conviction and the imposition of sentence. State ex rel. Jaffa v. Crepeau, 150 Minn. 80, 184 N. W. 567; State ex rel. Kelly v. Wolfer, 119 Minn. 368, 138 N. W. 315, 42 L.R.A.(N.S.) 978, Ann. Cas. 1914A, 1248; Guy v. Utecht, 216 Minn. 255, 12 N. W. (2d) 753; State ex rel. Jenks v. Municipal Court, 197 Minn. 141, 266 N. W. 433; State v. Chandler, 158 Minn. 447, 197 N. W. 847; Escoe v. Zerbst, 295 U. S. 490, 55 S. Ct. 818, 79 L. ed. 1566; Annotations: 54 A. L. R. 1471; 132 A. L. R. 1248. See, § 610.39. Neither is there any constitutional right to assistance of counsel after the completion of the trial and such appeal therefrom as may be provided by law. People ex rel. Harris v. Ragen (D. C.) 81 F. Supp. 608 (holding parolee not entitled to services of an attorney at hearing for revocation of his parole); Hodge v. Huff, 78 App. D. C. 329, 140 F. (2d) 686 (no right to counsel on habeas corpus hearing subsequent to trial); Ex parte Boyd, 73 Okl. Cr. 441, 122 P. (2d) 162 (revocation of probation); People ex rel. Ross v. Ragen, 391 Ill. 419, 63 N. E. (2d) 874, 162 A. L. R. 920 (habeas corpus proceeding after conviction); Bennett v. United States (8 Cir.) 158 F. (2d) 412 (revocation of probation). Neither is there any constitutional right to a hearing before revocation of probation.

[13]"Due process does not comprehend the right of appeal." District of Columbia v. Clawans, 300 U. S. 617, 627, 57 S. Ct. 660, 663, 81 L. ed. 843, 847; McKane v. Durston, 153 U. S. 684, 687, 14 S. Ct. 913, 915, 38 L. ed. 867, 868.

In all these arguments, defendant seeks to confuse the administrative supervision of convicted offenders after the imposition of sentence with proceedings that take place prior to the imposition of sentence. The trial terminates when the defendant is convicted. No rights of the defendant are affected by the act in any way, up to that time. The court must then impose such sentence as the legislature has prescribed. In this case, the mandatory sentence is commitment to the commission unless the court places defendant on probation. Supervision of defendant after commitment may be vested in an administrative board without violating any constitutional rights of defendant. That is what the act does.

"* * * This commitment is a judicial determination of the fact of defendant's conviction and a pronouncement of the sentence for the offense, namely, commitment to the Authority for the term prescribed by law, and is therefore the court's judgment and sentence of the convict * * * and is appealable." In re Herrera, 23 Cal. (2d) 206, 214, 143 P. (2d) 345, 349.

See, also, 1 Freeman, Judgments (5 ed.) p. 172.

We conclude that the act does not violate any provision of the state or federal constitutions insofar as it is now before us. The decision of the trial court is reversed with instructions to proceed with the imposition of sentence in accordance with the law.

So ordered.