IN RE WELFARE OF DEE LOWELL LOYD v. YOUTH CONSERVATION COMMISSION.

177 N. W. (2d) 555.

April 17, 1970—No. 41773.

*Smith & Munro, Bernard P. Becker,* and *Gerald C. Heetland,* Legal Aid Society, Inc., for appellant.

*Douglas M. Head,* Attorney General, *Richard H. Kyle,* Solicitor General, and *James N. Bradford,* Special Assistant Attorney General, for respondent.

SHERAN, JUSTICE.

Appeal from an order of the Hennepin County District Court, Juvenile Division, denying appellant's motion for an order granting a hearing before the Youth Conservation Commission upon revocation of parole, with the following rights to be guaranteed appellant:

(a) Notice of any alleged violation of law.

(b) Court-appointed counsel.

(c) A fact hearing on the allegations.

(d) Confrontation and cross-examination of witnesses.

(e) Presentation of evidence in his own behalf.

(f) Minimal demands of due process, including presumption of innocence, burden of proof beyond a reasonable doubt, and bail.

Appellant was declared a delinquent on April 21, 1967, and was committed to the Youth Conservation Commission pursuant to Minn. St. c. 242. Appellant was placed in the State Training School at Red Wing, Minnesota, on May 15, 1967, and was granted parole on July 5, 1968. While on parole, appellant was allegedly involved in an incident at Central High School, Minneapolis, Minnesota, where he was a student, on September 19, 1968. Following the incident, appellant was arrested and confined at the Lino Lakes Reception Center. Appellant's mother requested the Youth Conservation Commission to allow her to be present, together with counsel for appellant, at parole violation proceedings. Counsel and appellant's mother were allowed only to meet with an official of the Youth Conservation Commission for one-half hour preceding a hearing on October 1, 1968. The hearing, at which appellant was allowed to testify in his own behalf, resulted in the revocation of appellant's parole and his re-

14

commitment to the Red Wing school.[1] Appellant then moved the district court for relief which was denied. This appeal results.

■ This appeal challenges the validity of State v. Meyer, 228 Minn. 286, 37 N. W. (2d) 3,[2] as it relates to this case, in light of recent holdings of the United States Supreme Court and of other state courts. In the Meyer case we upheld the Youth Conservation Act, Minn. St. c. 242, as not being repugnant to the United States or Minnesota Constitutions. We there held that neither constitution required the guarantee of the above-enumerated rights in parole revocation proceedings. In denying appellant's motion, the district court held that recent developments in constitutional law do not require a broadening or reversal of Meyer. We affirm.

Appellant bases his claim upon a series of cases beginning with Kent v. United States, 383 U. S. 541, 86 S. Ct. 1045, 16 L. ed. (2d) 84. In that case the 16-year-old petitioner was charged with housebreaking, robbery, and rape. Under District of Columbia law, he was subject to the exclusive jurisdiction of the juvenile court unless that court should waive jurisdiction and remit him to the District of Columbia District Court for trial. Petitioner requested access to the juvenile court's social service file pertaining to a prior probation, and he moved the court for a hearing on the question of waiver. Without ruling on these motions, the juvenile court waived jurisdiction over petitioner and bound him over to district court, where he was tried and convicted. On appeal the Supreme Court remanded for a determination of whether the juvenile court, in waiving jurisdiction, had afforded petitioner the right to a hearing, access by counsel to court records, and a statement of reasons for waiver sufficient for appellate review. Entry of judgment upon the conviction was conditioned upon the determination of the appropriateness of the waiver by the juvenile court. In declaring the due process

[1] Minn. St. 242.10, 242.19.

[2] See, also, Guy v. Utecht, 216 Minn. 255, 12 N. W. (2d) 753; Id. 229 Minn. 58, 38 N. W. (2d) 59, certiorari denied, 338 U. S. 905, 70 S. Ct. 307, 94 L. ed. 557.

rights of the accused juvenile, the Supreme Court limited its holding to proceedings involving waiver of jurisdiction by the juvenile court, reasoning that such waiver "is a 'critically important' action determining vitally important statutory rights of the juvenile." 383 U. S. 556, 86 S. Ct. 1055, 16 L. ed. (2d) 94.

The second case relied upon by appellant is In re Gault, 387 U. S. 1, 87 S. Ct. 1428, 18 L. ed. (2d) 527. In that case a 15-year-old was taken into custody on complaint of making a lewd telephone call. Following hearings he was committed to the State Industrial School until he should attain his majority. His parents brought habeas corpus proceedings, resulting in the appeal. The Supreme Court held that the due process clause of the Fourteenth Amendment of the United States Constitution requires that adjudication of delinquency must measure up to the essentials of a fair trial, including notice of charges; being informed of right to counsel, with an attorney to be provided if necessary; being informed of the privilege against self-incrimination and right to remain silent; and, absent a confession, confrontation and cross-examination of witnesses. The court reasoned that the constitutional guarantees of due process encompass juveniles to the same extent as adults. However, the court limited its holding to the adjudicatory stage, where commitment may follow.

The most recent case relied upon by appellant is Mempa v. Rhay, 389 U. S. 128, 88 S. Ct. 254, 19 L. ed. (2d) 336.[3] In that case petitioner had previously pled guilty to "joyriding," for which he was placed on probation for 2 years with sentencing deferred under Washington state law. While on probation, he was charged with burglary. Denied the right to counsel at the probation revocation hearing, petitioner "acknowledged involvement" in the alleged burglary. Probation was revoked and he was sentenced to 10 years. He brought habeas corpus proceedings 6 years later, claiming denial of the right to counsel at the probation revocation proceedings. The Supreme Court held that the Sixth Amend-

---

[3] See, also, DeBacker v. Brainard, 396 U. S. 28, 90 S. Ct. 163, 24 L. ed. (2d) 148.

ment, applied to the states through the due process clause of the Fourteenth Amendment, required that petitioner be granted the right to counsel. The Court stated that certain prior decisions, most notably Gideon v. Wainwright, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. (2d) 799, "clearly stand for the proposition that appointment of counsel for an indigent is required at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected." 389 U. S. 134, 88 S. Ct. 257, 19 L. ed. (2d) 340. However, the determination that petitioner was entitled to counsel was limited to sentencing procedures on the rationale that a criminal accused possesses certain important rights at sentencing, which rights may be lost if counsel is not present.[4]

We cannot agree with the appellant in the instant case that these decisions, or any other decisions by the United States Supreme Court, require us to reverse our holding in State v. Meyer, *supra,* as it relates to this case. The holdings in the above listed cases were all limited to crucial procedural phases of criminal adjudication. Those phases had all been accomplished in the instant case when the challenged procedure occurred, and appellant makes no claim that the prior phases were constitutionally irregular. We do not feel constrained to extend the above listed holdings beyond their express limitations to the facts of this appeal.

Appellant also relies upon recent holdings of other state and Federal courts, such as Reed v. Butterworth, 111 App. D. C. 365, 297 F. (2d) 776; Velasquez v. Pratt, 21 Utah (2d) 229, 443 P. (2d) 1020; Warden v. Palumbo, 214 Md. 407, 135 A. (2d) 439. We do not find the reasoning of those decisions persuasive in the context of this appeal, however. Furthermore, it appears that the majority of states do not recognize a right to counsel and a full evidentiary hearing on charges of parole violation.[5]

---

[4] See, also, Sorensen v. Young (D. Minn.) 282 F. Supp. 1009, in which the Federal District Court limited the holding of Mempa to sentencing procedures.

[5] See, e.g., Saunders v. Parole Board, 15 Mich. App. 183, 166 N. W. (2d)

As indicated in State v. Meyer, *supra*, the purpose of the Youth Conservation Act is to rehabilitate juveniles adjudicated delinquent by a flexible system of supervision. The system allows the delinquent the maximum degree of individual liberty consistent with public safety and with the progress of reformation of his attitudes toward society. The act is based upon the principle that rehabilitation may better be attained by individual supervision and attention than by confinement to a penal institution.

But a correctional system based on flexible, individual supervision sometimes requires prompt action by the controlling authority, unencumbered by procedural formalities as far as possible, to meet changing circumstances in the rehabilitation of the individual subject. If we are to encourage early parole of youthful offenders, as the Youth Conservation Act is aimed to achieve, we should not at the same time create procedural obstacles to the revocation of parole thereunder, for the officials can hardly be expected to grant early parole if they must also provide the individual with all due process rights every time he is suspected of violating the conditions of parole. Absent a showing of abuse or arbitrariness on the part of the officials, we must grant them discretion in taking such steps as are necessary to the welfare of the youthful offender and to public safety.

The Minnesota youth correctional system is grounded in the philosophy of parens patriae, namely, that the state has the inherent power to take such steps as are necessary for the protection and welfare of the child. See, State ex rel. Knutson v. Jackson, 249 Minn. 246, 82 N. W. (2d) 234; Peterson v. McAuliffe, 151 Minn. 467, 187 N. W. 226. This philosophy, admittedly under attack in some quarters,[6] has operated well as applied to our system of rehabilitation. We regard the Youth Conservation Commission as a progressive and highly satisfactory correctional

278; Menechino v. Division of Parole, 57 Misc. (2d) 865, 293 N. Y. S. (2d) 741, reversed, 32 App. Div. (2d) 761, 301 N. Y. S. (2d) 350; State ex rel. Gilmore v. Cupp (Ore.) 458 P. (2d) 711.

[6] E.g., In re Urbasek, 38 Ill. (2d) 535, 232 N. E. (2d) 716.

entity and nothing in this record compels us to encumber or restrict it.

■ Appellant also contends that the provisions of Minn. St. 242.36 effectively deny him due process of law in violation of the Fourteenth Amendment of the United States Constitution. That section provides that any person committed to the Youth Conservation Commission after conviction of a felony or gross misdemeanor may request the commission to conduct a full hearing with counsel to review any order issued under §§ 242.10(1) and 242.19, and he may then apply to the district court for a de novo review of the final order of the commission. Appellant asserts that by limiting these review provisions to juveniles committed to the commission after conviction of a felony or gross misdemeanor, § 242.36 effectively denies the same rights to juveniles committed to the commission after adjudication of delinquency, and thus denies the equal protection of the law to juveniles in the latter category. We cannot agree with appellant, however, since § 242.36 does not guarantee any review procedures for juveniles committed after conviction, but leaves such procedures in the discretion of the commission and the district court, and nothing in § 242.36 or any other provision of the Youth Conservation Act prevents the commission or the district court from affording the same review procedures to juveniles committed after adjudication of delinquency if so requested.

Even if appellant were to establish that § 242.36 as applied has resulted in greater review procedures for those committed after conviction than for those committed after adjudication of delinquency, we still would not be inclined to hold that such practice denied the equal protection of the law to juveniles committed after adjudication. The juvenile adjudicated delinquent, such as appellant, has not been convicted of a crime, and thus the treatment given him under the Youth Conservation Act is purely educational, to prevent future criminal conduct. See, State v. Meyer, *supra.* On the other hand, the treatment afforded a juvenile convicted of a felony or gross misdemeanor is designed

to rehabilitate one who has already engaged in serious antisocial behavior. Any difference in treatment of members of the two classes of juveniles is certainly reasonable in light of the purpose of the Youth Conservation Act,[7] and nothing stated herein is inconsistent with State v. Borst, 278 Minn. 388, 154 N. W. (2d) 888.

Affirmed.

---

[7] See, Carrington v. Rash, 380 U. S. 89, 85 S. Ct. 775, 13 L. ed. (2d) 675; Johnson v. State Civil Service Dept. 280 Minn. 61, 157 N. W. (2d) 747.