118 So.2d 629 (1960)
J.D. CARNLEY, Petitioner,
v.
H.G. COCHRAN, Jr., Director, Division of Corrections, State of Florida, Respondent.
Supreme Court of Florida.
March 11, 1960.
*630 J.D. Carnley in pro. per.
Richard W. Ervin, Atty. Gen., and B. Clarke Nichols, Asst. Atty. Gen., for respondent.
THORNAL, Justice.
Carnley, having been convicted on four counts of forgery, seeks release from the State Prison on a writ of habeas corpus.
We must pass on the validity of petitioner's sentence.
On June 30, 1958, Carnley was convicted on charges of forging four bank checks. The forged checks varied in amounts from $10 to $21.28. On July 28, 1958, Carnley was adjudged guilty and sentenced to a term of six months to ten years on each count. The sentences were to run concurrently. Petitioner was committed to the Division of Corrections which in turn caused him to be incarcerated in Apalachee Correctional Institution. Thereafter, on May 11, 1959, Carnley was convicted of the crime of escape from Apalachee. For the escape he was sentenced to a term of three years to begin "at the expiration of the sentences" he was then serving. Pursuant to the last conviction Carnley was imprisoned in the State Prison at Raiford where he now remains in custody of the respondent. His dissatisfaction with this station in life produces this proceeding.
The petitioner contends that since the forgery information failed to allege that he had received something of value for the forged checks, he could not have been convicted of committing a felony. He cites: State ex rel. Shargaa v. Culver, Fla., 113 So.2d 383; Section 831.01, Florida Statutes, as Amended by Chapter 59-31, Laws of Florida, 1959, F.S.A. He contends also, that the original indeterminate sentence imposed by the trial judge in the forgery matter constituted an "indefinite imprisonment" prohibited by Section 8, Declaration of Rights, Florida Constitution, F.S.A.
The respondent contends that the statute covering forgery at the time of the conviction of the petitioner authorized imprisonment up to ten years regardless of the amount involved. He further contends that the indeterminate sentence is not prohibited by the Florida Constitution.
There is no merit whatever to the first point raised by the petitioner even though the amount of each check was much less than $100 and even though it was not alleged that he received anything of value in exchange therefor. The crime of forgery denounced by Section 831.01, Florida Statutes, 1957, F.S.A., in effect at the time of the commission of the offense, *631 authorized imprisonment in the State Penitentiary for a period not exceeding ten years. The sentence imposed by the trial judge in the forgery matter did not exceed the maximum allowed by law. In this regard, therefore, it was perfectly legal. The sentence imposed by the trial judge for escape from Apalachee Correctional Institution was within the limits authorized by law. This sentence also was valid. Section 944.40, Florida Statutes, 1957, F.S.A.
Petitioner assaults his original sentence on the ground that because it was indeterminate it violated the provisions of Section 8, Declaration of Rights, Florida Constitution, which prohibits "indefinite imprisonment." The sentence imposed by the trial judge in the forgery matter complied strictly with the provisions of Section 921.18, Florida Statutes, 1957 F.S.A. By Chapter 57-366, Laws of Florida, 1957, the Florida Legislature authorized the imposition of a sentence for an indeterminate period upon conviction for noncapital felonies. Unless for some reason this statute can be held to be violative of the organic law, the sentence imposed pursuant to the forgery conviction must be sustained.
The validity of Chapter 57-366, supra, has not previously been passed upon by this Court. However, a careful study of its provisions in this instance leads us to the conclusion that it is absolutely consistent with the requirements of the Florida Constitution. It is also in line with the recommendations of present-day penologists and criminologists regarding the objectives to be accomplished by the imposition of sentences to imprisonment as punishment for crime.
We are tempted to explore the various traditional viewpoints regarding the reasons for or the causes of violations of the criminal laws. For years criminologists have differed in their explanations of the motivations that lead individuals to commit crimes. Whether a particular crime is the product of individual delinquencies or communal environment is not a problem for us here to resolve. We are called upon to examine, at least briefly, the viewpoints of experienced penologists regarding the justification for a sentence and the extent thereof in criminal cases.
In the time of the ancient Hebrews, and for centuries thereafter, a basic concept of punishment for the commission of crime was retribution. It was thought that if an individual violated the laws prescribed for the governance of the community he should compensate in kind, whether physical or material, as a retributive punishment for the offense which he had committed. So it was that in prescribing the type of judgments which should be imposed upon the Hebrew people, God instructed Moses:
"And if any mischief follow, then thou shalt give life for life,
"Eye for eye, tooth for tooth, hand for hand, foot for foot,
"Burning for burning, wound for wound, stripe for stripe."
See Exodus 21:23-25.
This concept of retributive justice permeated the early Hebrew criminal law. Indeed, according to the Talmud there were thirty-six capital crimes punishable by such inhuman procedures as beheading, strangling, burning, and stoning. Chandler, The Trial of Jesus, Volume 1, Chapter 2. This notion continues to influence the thinking of many.
With the passage of time, and especially during the current century, penologists and sociologists have arrived at the conclusion that retribution, in and of itself, is unjustifiable as the sole and only objective of punishment for crime.
An enlightened society is rapidly coming to the view that the results to be accomplished by a sentence in a criminal matter are two-fold, to wit: (1) deterrence, and (2) rehabilitation.
*632 The National Probation and Parole Association, following the advice of a Council of Judges, headed by the late Chief Judge Bolitha J. Laws, suggests this dual aspect as the purpose and objective of a sentence in any particular criminal case. See, Guides for Sentencing, 1957, National Probation and Parole Association.
The currently accepted guide to a sentence in a criminal matter is that it should be sufficiently severe to deter the particular offender and others similarly conditioned from committing other breaches of the criminal law. Nevertheless, it should be sufficiently flexible to permit opportunity to consider the individual involved in order to take advantage of every possibility for rehabilitation.
As Judge Laws so ably suggests, the sentencing judge must evaluate the qualities and potentials of the individual before him in the light of his judicial responsibility to the community. While each offender must in a sense receive individualized punishment, it is also important that relatively equivalent cases should receive relatively equivalent treatment. See, Guides for Sentencing, p. 5, supra.
The so-called indeterminate sentence authorized by Chapter 57-366, supra, makes possible the accomplishment of all of these various aspects of correcting law violators. It treats similar cases similarly because it provides a fixed minimum with a maximum not in excess of the longest period of imprisonment authorized by law for the particular felony. It enables executive agencies, such as the Department of Corrections with the aid of the Parole Commission and probation officials to assign the particular individual to the institution best adapted to handle people of his background, experience and criminal history. It makes possible a more flexible opportunity for rehabilitation. It constantly holds out to the individual law violator the incentive to minimize his term of imprisonment. It offers him every chance to re-establish himself as a useful member of society, provided he has the courage and ambition to accomplish this desirable result.
Section 921.18, Florida Statutes, F.S.A., is merely an exercise of the legislative power to prescribe penalties and punishment for the commission of crimes. It is not subject to the infirmity of indefiniteness for the reason that the statute fixes a minimum of six months and provides a maximum period of imprisonment that is authorized by law as punishment for the particular felony. Inasmuch as the trial judge has the power to commit the guilty party to imprisonment for the maximum period, the convicted person can not complain of injury if a sentence is prescribed which makes it possible for his imprisonment to be terminated at a time less than the maximum. The matters of probation and parole, as well as pardons, are in the nature of executive functions. The fact that agencies other than the courts are endowed with the power to exercise these functions does not constitute any encroachment upon the judicial prerogative or the exercise of judicial functions by nonjudicial officers.
Statutes authorizing indeterminate sentences have generally been upheld against assaults on their constitutionality. They are regarded as an enlightened legislative recognition of the modern processes for punishing those who have violated the criminal laws. At the same time such statutes provide opportunities for the rehabilitation of the convicted individual and his potential restoration to usefulness in society. 15 Am.Jur. "Criminal Law," p. 169, Section 520; State v. Mulcare, 189 Wash. 625, 66 P.2d 360; Tsao, On Rational Approach to Crime and Punishment, pp. 95, 269 and 280; State ex rel. Kelly v. Wolfer, 119 Minn. 368, 138 N.W. 315, 42 L.R.A.,N.S., 978; Burns v. People, 9 Ill.2d 477, 138 N.E.2d 525; 50 Harvard Law Review 677; "Florida's New Penal and Correctional Program," William C. Merritt, Vol. XII, Miami Law Review 200.
*633 The writ of habeas corpus heretofore issued herein is hereby discharged and the petitioner Carnley is hereby remanded to the custody of the respondent.
It is so ordered.
THOMAS, C.J., and ROBERTS, DREW and O'CONNELL, JJ., concur.