**STATE of Minnesota, Appellant,**

v.

**Billy Roy TYLER, Respondent.**

**No. 48796.**

Supreme Court of Minnesota.

Jan. 26, 1979.

Heard before SHERAN, C. J., ROGOSH-
ESKE and PETERSON, JJ., and considered
and decided by the court en banc.

ROGOSHESKE, Justice.

This is an appeal by the state on behalf of
the Minnesota Corrections Board (MCB)
from an order of the committing district
court discharging Billy Roy Tyler from im-
prisonment and the board's control result-
ing from a conviction on a plea of guilty for
the crime of kidnapping in 1973, when he
was 20 years old. By its order, the commit-
ting district court reversed an order of the
board refusing to discharge defendant Tyler
on his 25th birthday and transferring him
from youthful to adult status upon the
board's finding, after hearing, that Tyler's
discharge would be "dangerous to the pub-
lic." As the parties agree, the transfer
proceedings before the board and the com-
mitting district court are governed by pro-
visions of the Youth Conservation Act, en-
acted in 1947 and in force at the time of
Tyler's conviction and sentencing.[1] Since
our interpretation of the statutory scheme
governing the procedures for the commit-
ting district court's de novo review of the
final order of the MCB is that an appeal by
the state is not authorized, we dismiss the
appeal.

In July 1973, Tyler upon a plea of guilty
was convicted of kidnapping. He was then
20 years old. Rejecting probation as an
alternative disposition, the district court as
required by Minn.St.1971, § 242.13, commit-
ted Tyler to the custody of the Youth Con-
servation Commission (YCC) for an indeter-
minate term not to exceed 20 years, the

Warren Spannaus, Atty. Gen., Thomas L.
Fabel, Deputy Atty. Gen., David Valentini,
Sp. Asst. Atty. Gen., St. Paul, for appellant.

C. Paul Jones, Public Defender, J. Chris-
topher Cuneo, Asst. Public Defender, Min-
neapolis, Faegre & Benson and George W.
Flynn, Minneapolis, for respondent.

1. The primary purpose of the Youth Conserva-
tion Act, L.1947, c. 595, was the reformation
and rehabilitation of youthful offenders. It es-
tablished the Youth Conservation Commission
to which all youthful offenders (those under 21
years of age) convicted of felonies or gross
misdemeanors not granted probation were re-
quired to be committed for the maximum inde-
terminate term. The commission was given
jurisdiction over such offenders through their
25th birthday, at which time discharge was
mandated unless the commission determined
that such discharge would be "dangerous to the
public." In such event, the offender was af-
forded a right to be heard before the commis-
sion and to a de novo hearing by the commit-
ting district court. If the order of transfer was
upheld by the court, responsibility for the of-
fender was vested in the Adult Corrections
Commission. In 1973, amendments to the act
abolished the Youth Conservation Commission
and its counterpart, the Adult Corrections
Commission. The authority and responsibility
for both were assigned to the Minnesota Cor-
rections Board. L.1973, c. 654. In 1977, the
remaining provisions of the youth act were
repealed and the significance of reaching age
25 for the consideration of the question of dis-
charge was eliminated. L.1977, c. 392, § 14.

maximum term provided for the offense of kidnapping. While he was under the custody of the MCB, successor to the YCC, he was twice paroled from confinement. His first parole in March 1974 was revoked in March 1975 upon conviction by plea of guilty of selling marijuana. His second parole, granted in September 1975, was revoked in August 1977 upon his conviction by plea of guilty in March 1977 of criminal damage to property and resisting arrest in Wisconsin and his conviction in this state by plea of guilty in August of 1977 of possessing a small amount of marijuana. Upon revocation he was returned to confinement in the state prison. As Tyler approached his 25th birthday, the MCB, as required by Minn.St.1976, § 242.27, met to determine whether he should be discharged or transferred to adult status to serve the balance of his sentence. A determination by the MCB that his "discharge at the time would be dangerous to the public" was contested by Tyler. Pursuant to Minn.St.1976, § 242.-36(1), he was afforded a hearing of record before the board. Represented by counsel, Tyler and his father orally testified and Tyler submitted affidavits of others in support of his contention that his discharge would not be dangerous to the public. In December 1977 the board affirmed its decision to transfer Tyler to adult status. Pursuant to Minn.St.1976, § 242.36(3), Tyler sought and was granted a de novo review of the board's determination by the committing district court. After an extensive hearing, the district court upon comprehensive findings of fact concluded that the state failed to prove that Tyler's discharge was "dangerous to the public" and ordered his discharge from custody and confinement.

The state seeks appellate review of the court's discharge order. In essence, it is claimed that the committing district court erred in determining that the board had not met its burden of proof that Tyler's discharge would be "dangerous to the public." The state claims that the committing district court limited that phrase (not defined in the youth act) to the probability of violent physical harm to others in disregard of the board's contention that it embraces the probability of future criminal conduct, both violent and nonviolent.

The state asserts a statutory right of appeal from the committing court order upon the wording of Minn.St.1976, § 242.-36(4):

"The final order [by the MCB] shall remain in full force and effect until reversed by the committing district court, and if appeal is taken to the supreme court, until that court makes its final order."

Although the language used arguably supports the state's assertion, an analysis of the statutory scheme embodied in the youth act and its primary purpose to reform and rehabilitate youthful offenders by treatment and training preferable to imprisonment persuades us that the legislature neither expressly granted nor intended to grant the state a right to appeal a committing district court's decision adverse to the MCB in transfer proceeding.[2]

A detailed examination of the history, purpose, and provisions of the youth act is set forth in *State v. Meyer*, 228 Minn. 286, 37 N.W.2d 3 (1949); Pirsig, *Procedural Aspects of the Youth Conservation Act*, 32 Minn.L.Rev. 471 (1948); and Note, *Sentence and Release of Youthful Offenders*, 34 Minn.L.Rev. 532 (1950). A singular feature of the act was the extent to which it curtailed the committing court's discretion as to the sentence that may be imposed. With exceptions not here pertinent, the court could not commit a youth under 21 years of age to a penal institution. Except for the court's authority to place the offender on probation, the act made it mandatory to commit the offender to the YCC, and after

---

2. Section 242.36 proceedings transferring youthful offenders to adult status, which involve a de novo hearing by the committing court and place the burden on the MCB to justify further incarceration and denial of liberty, partake of some important aspects of criminal proceedings. This could justify application of the well-settled rule that a state may not appeal in a criminal case absent an express enabling statute. *City of St. Paul v. Halvorson*, 301 Minn. 48, 221 N.W.2d 535 (1974). But see, *State v. Wingo*, 266 N.W.2d 508 (Minn.1978).

1973 to its successor, the MCB, for the maximum term provided for the crime for which the offender was convicted. Our youth act was patterned after the Youth Correction Authority Act, a model act adopted by the American Law Institute in 1940.[3] The model act mandated commitment of all offenders to the youth authority, with no authority by the committing court to grant probation. To ameliorate this severe curtailment of judicial discretion and the possibility of indefinite confinement, the model act contained provisions for petitions and review at the end of every 5-year period.[4] In contrast to the model act, our youth act authorized judicial probation and upon commitment required unconditional discharge by the youth authority on the expiration of the term for which the offender was sentenced. If the offender became 25 years old before that time, discharge from custody and control was mandated unless the youth authority determined that such discharge would be dangerous to the public.[5] Upon application by the offender, the youth authority's determination to deny discharge and order transfer to the adult authority was reviewable of right by the committing district court. The review provided was an adversary de novo hearing, clearly demonstrating a legislative intent that the committing district court need not defer to the youth authority but may substitute its own judgment. The policy underlying these provisions authorizing both judicial probation and discharge reveals a legislative intent that the local community retain significant responsibility for its youthful offenders, despite the overall objective of affording to such offenders specialized training and treatment directed toward their reformation and rehabilitation under the centralized state agency.[6] We are thus persuaded that it would not be consistent with the statutory scheme of the youth act as it remained effective until 1977 to hold that the legislature intended to grant an appeal of right to the state from the discharge order of the local community's committing district court.

 Our dismissal of the appeal precludes reaching the issue of the proper interpretation of the phrase "dangerous to the public." In view of the disclosure at oral argument that approximately 300 youthful offenders remain committed to the MCB and may challenge the board's denial of discharge on their 25th birthday, we feel constrained to make these comments. As the state at oral argument concedes, the committing district court in this case properly placed on the board the burden of proving that Tyler's discharge from custody would be dangerous to the public. Also, our reading of the record does not support the board's argument that the court limited the interpretation of "dangerous to the public" to threats of physical injury. The court properly considered and evaluated Tyler's entire record, including the commission of nonviolent offenses while on parole, in reaching the decision to order his discharge.

Appeal dismissed.

---

3. See, 17 ALI Proceedings 148–232 (1940), and *State v. Meyer,* 228 Minn. 286, 37 N.W.2d 3 (1949).

4. See, 34 Minn.L.Rev. 532, 538 (1950).

5. Youths found delinquent by the juvenile court were also covered by the act. Upon a commitment by a juvenile court, the act mandated an unconditional discharge by the youth authority when the offender reached age 21.

6. See, 32 Minn.L.Rev. 471, 472 (1948).