Anthony TUCKER, Petitioner, Appellant,

v.

STATE of Minnesota et al.,
Respondents.

No. 50260.

Supreme Court of Minnesota.

June 20, 1980.

C. Paul Jones, Public Defender, and Gregory A. Gaut and Kathleen K. Rauenhorst, Asst. Public Defenders, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and David L. Valentini, Sp. Asst. Attys. Gen., St. Paul, for respondents.

Heard before OTIS, ROGOSHESKE, and TODD, JJ., and considered and decided by the court en banc.

KELLY, Justice.

Appellant, Anthony Tucker, appeals from the decision of district court affirming the Minnesota Corrections Board's (MCB) decision to transfer him to adult status and continue his incarceration pursuant to the provisions of the Youth Conservation Act (Act).[1] He argues that the MCB and the district court erred in denying him a discharge because he does not present a danger to the public at this time. We affirm.

Minn.Stat. § 242.27 (1976) required that at age 25 a youthful offender must be discharged unless the board determines that "discharge at that time would be dangerous to the public." A finding a dangerousness results in the denial of a discharge and a transfer to adult status when an offender, sentenced pursuant to the Act, reaches his or her 25th birthday. He or she then becomes eligible for parole according to the matrix system. The state has the burden of proving dangerousness. *State v. Tyler*, 275 N.W.2d 800, 803 (Minn. 1979). The offender's "entire record, including the commission of nonviolent offenses" is properly considered when making a decision as to whether he or she should be granted an unsupervised discharge. *Id.*

The facts are undisputed. Tucker was convicted of second-degree murder for the killing of James Hultman with a sawed-off shotgun at point blank range in circumstances indicating an attempted armed robbery of the victim. Because Tucker was 20 years old at the time of his sentencing on March 4, 1974, he was sentenced according to the Act, Minn.Stat. § 242.13 (1971). Tucker received the maximum sentence for his crime, 0–40 years, as required by the statute and was placed under the control of the YCC. From March 1974, when he began to serve his sentence, until February 1978, Tucker engaged in activities resulting in the entry of multiple violations on his prison record. The three most serious violations are assault, possession of a contraband weapon, and possession of contraband drugs. His record shows numerous violations for unlawful assembly and failure to obey a direct order. However, Tucker has not had a violation on his prison record since February 4, 1978. This clear record has continued until at least the district court proceedings on May 30, 1979. Additionally, he has taken college courses and learned job skills as a welder. Because of

---

1. Minn.Stat. § 242.27 (1976). The entire Youth Conservation Act was repealed in 1977. 1977 Minn. Laws, ch. 392, § 14. The Act, however, remains applicable to parties originally placed under control of the Youth Conservation Commission. The Minnesota Corrections Board is the successor to the Youth Conservation Commission (YCC).

the above factors as well as evidence of Tucker's family support, Joseph Simmers, Tucker's caseworker, recommended that he be discharged on his 25th birthday.

On September 26, 1978, the Minnesota Corrections Board decided to transfer Tucker to adult status when he turned 25 years old instead of discharging him because the board believed that Tucker was dangerous to the public. Tucker protested the decision and requested a hearing before the Board. On January 31, 1979, two members of the Board heard Tucker's petition. These two members reported back to the full Board, which affirmed the earlier transfer order on March 13, 1979. Tucker petitioned for a de novo review of the order in district court pursuant to Minn.Stat. § 242.36 (1976). On June 20, 1979, the court affirmed the transfer order. In so doing, the court recognized, as we do, that the Act presents a Hobson's Choice. It offers only two alternatives—continued incarceration or unsupervised release. The court balanced defendant's entire record consisting of his murder conviction and four years of activity in prison, which clearly indicates that he presents a danger to the public, against the one year in which defendant took significant steps toward rehabilitation. The court concluded:

> If petitioner has had a change of heart, let him prove himself under supervision. The affirmation of petitioner's transfer to adult status merely enables Minnesota Corrections officials to maintain some measure of control over petitioner's life following his twenty-fifth birthday—a measure of control certainly required by a committing offense of Murder.

\* \* \* \* \* \*

Based upon the Court's thorough consideration of the entire record, it strongly urges the MCB to consider petitioner as a candidate for parole at this time.

Because it is our view that a person not subject to supervision can be dangerous to the public, while he or she might not present such a danger if supervised, we affirm the decision of the district court. Both the committing offense of murder and

Tucker's prison record from 1974 through February 4, 1978, indicate dangerousness. His record from February 4, 1978 until the time of the district court hearing indicates that he has taken substantial steps toward rehabilitation. However, there is sufficient evidence to hold that Tucker would present a danger to the public if he were released unsupervised.

Affirmed.

TODD, Justice (dissenting).

I dissent.

The majority opinion states that the decision about whether to transfer or release Tucker should be based upon his "entire record" consisting of his committing offense and his activity while in prison. While I agree that this is the proper test, I do not agree that this was the test employed by the Minnesota Corrections Board (MCB) and the district court. In this case, the MCB and the district court decided that Tucker's committing offense was so serious that he was disqualified from release under the provisions of the Youth Conservation Act. As the district court stated in its memorandum accompanying its decision:

> It was conceded by Respondent [the state] at the hearing that the MCB considered other factors in its determination of dangerousness, but it was based primarily on the seriousness of petitioner's committing offense. In essence, Respondent claims that discharge of petitioner at this time would deprecate the seriousness of the offense and make a mockery of criminal law. In view of the alternatives available to the MCB, this statement is understandable and probably a correct assessment.

This approach to the release or transfer decision frustrates the legislative intent of the Youth Conservation Act. The legislature created the Youth Conservation Act in order to substitute "for retributive punishment methods of training and treatment directed toward the correction and rehabilitation of young persons found delinquent or guilty of crime." Minn.Stat. § 242.01

(1976). Although Tucker has committed a heinous crime, the MCB and the district court cannot disqualify Tucker from the possibility of release under provisions of the act when the legislature has specifically determined which types of youth offenders are subject to release under the act and which types are not. Minn.Stat. § 242.13 (1976). The sole question before the MCB and the district court was whether Tucker was presently dangerous to the public *at the time* of his twenty-fifth birthday. If Tucker was not presently dangerous, his release is statutorily mandated.

The district court's memorandum indicates the problem created by relying primarily on the nature of the committing offense when deciding the question of present dangerousness. The court affirmed Tucker's transfer to adult status and continued incarceration because of the seriousness of Tucker's committing offense, and yet, it also recommended that Tucker's present status justified immediate parole. If Tucker is ready for immediate parole, however, it is logically inconsistent to maintain that he is presently dangerous to the public. The district court could only have recommended immediate parole if it found that Tucker was not presently dangerous. Thus, although Tucker has committed a horrible offense in the past, the record clearly and overwhelmingly demonstrates that he has achieved exactly what the YCC program contemplated—namely, self-rehabilitation. Since Tucker has become rehabilitated, I believe we must follow legislative mandate and order his discharge from custody. The fact that such discharge will be without supervision is, in my opinion, not necessarily in Tucker's best interest. Nevertheless, we cannot impose or recommend a probationary period when no such remedy is provided for by statute.

ROGOSHESKE, Justice (dissenting).

I concur in the dissent of Mr. Justice Todd.

WAHL, Justice (dissenting).

I concur in the dissent of Mr. Justice Todd.

OTIS, Justice (dissenting).

I concur in the dissent of Mr. Justice Todd.